811 So.2d 791 (2002)
W.W., the father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D01-3182.
District Court of Appeal of Florida, Fourth District.
March 13, 2002.
T. Charles Shafer, Fort Pierce, for appellant.
*792 Lorraine Smith of Guardian Ad Litem Program, Fort Pierce, and Crystal Y. Yates-Hammond, Fort Pierce, for appellee.
KLEIN, J.
Appellant's parental rights were terminated on two grounds: (1) because he had been incarcerated for a substantial portion of his children's minority, and (2) because he was a sexual predator. We reverse.
Appellant pled guilty to a lewd and lascivious act arising out of his having had sex with a fourteen year old girl. He was sentenced to fifty-four months followed by two years probation, with a condition that he not have unsupervised contact with minor children other than his own children. At the time of his incarceration, appellant's children were one, four and five years old. They are now four, seven and eight years old. Appellant was released in November, 2001, apparently having served forty-eight months of his sentence.
Prior to this incarceration, appellant served twenty months for arson and burglary before any of the children were born, and six months for violation of parole when the first and second children were under two years old.
The Department of Children and Families ("DCF") asserted a number of grounds for terminating appellant's parental rights, including abandonment; however, the trial court found that the state proved only two grounds. The first is section 39.806(1)(d)1, Florida Statutes (2001), which provides in part:
The department ... may petition for the termination of parental rights under any of the following circumstances:
* * *
(d) When the parent of a child is incarcerated in a state or federal correctional institution and ...
1. The period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years;
The trial court interpreted this statute to authorize termination where a parent is incarcerated for a substantial portion of the children's minority to date. That, however, is contrary to the language that the parent's "expected" incarceration "will constitute a substantial portion of the period of time before the child will attain the age of eighteen years." In the present case, appellant's incarceration was to end within several months after entry of the judgment. Fifty-four months, which is the total appellant will have served after the birth of the first child, is not a "substantial portion" of eighteen years. In addition, the language used in the statute speaks to the future, not the past.
The trial court also concluded that appellant's parental rights could be terminated under section 39.806(1)(d)2 which provides as a ground for termination that the parent is incarcerated and has been determined to be a sexual predator as defined in section 775.21. The trial court found that appellant was a sexual predator under section 775.21(4)(a)1.b; however, DCF concedes that this section is not applicable because it requires prior convictions which do not exist in this case.
DCF argues, however, that appellant meets the definition of a sexual predator found in section 775.21(4)(a)1.a. That statute is inapplicable because it requires a current conviction of a capital, life or first degree felony. Appellant's conviction was of a felony of a lesser degree.
A more basic problem with DCF's assertion that appellant is a sexual predator is that section 39.806(1)(d)2, Florida Statutes (2001), on which DCF relies, provides that parental rights may be terminated when *793 "[t]he incarcerated parent has been determined by the court to be ... a sexual predator as defined in s. 775.21." The term "sexual predator" as defined in section 775.21 is a legal classification which results from written findings made by the sentencing court in the criminal case. § 775.21(5), Fla. Stat. (2001). In the present case, appellant was not designated a sexual predator by the criminal court nor were any of the other procedures set forth in section 775.21 followed.[1]
In order to terminate parental rights, which constitute a fundamental liberty interest, the state must show by clear and convincing evidence that there will be a substantial risk of significant harm to the children such as abuse, neglect or abandonment. Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565 (Fla. 1991). Although appellant has had difficulty living within the law, he did live with the family and provide for the children at times when he was not incarcerated. The trial court found that appellant did not abandon his children and, in the absence of proof of any other statutory reasons for termination, we are compelled to reverse.
WARNER, J., concurs.
FARMER, J., concurs specially with opinion.
FARMER, J., concurring specially.
I agree that the order terminating the parental rights of the father must be reversed. Because there is an unresolved issue raised by the pleadings and argued by the parties at trial, however, I would remand for further proceedings.
The reversal is necessary because the two grounds on which the termination rests are not sustained by the record or the statute. And I think it important to elucidate further on why the basis relied on by the trial court will not work.
There are three children involved, one born in 1993, another in 1994, and the third in 1997. The father supported the children until his arrest in November 1997. The arrest lead to a conviction on June 25, 1998, for lewd and lascivious conduct, namely having sexual intercourse with a 14 year-old girl in whose home the father was living at the time. The father was sentenced to incarceration for 54.9 months, followed by a period of probation. His release date was ultimately set for November 7, 2001, when he was in fact released.
Meanwhile, in April 1998 DCF took the children into custody and filed a dependency petition, to which the father consented. DCF placed the children in foster care, where they have remained since. The mother had a history of mental problems, and on August 11, 2000, she agreed to a termination of her parental rights. Three days later DCF filed a petition to terminate the parental rights of the father. Thus when DCF filed its TPR petition, the father's expected incarceration amounted to slightly less than 15 months. By the time the TPR was actually tried, only a few months of incarceration remained.
DCF based its TPR case on a number of grounds founded on provisions contained in section 39.806(1). One of the grounds accepted by the trial judge, and which has been appealed by the father, is section 39.806(1)(d)1, which provides for a termination of parental rights when:
"the parent of a child is incarcerated in a... correctional institution and ... the period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period *794 of time before the child will attain the age of 18 years...." [e.s.]
I agree with Judge Klein that this provision looks forward from the imposition of sentence rather than backward to a prior criminal record. The statute gazes toward the future, from the time the parent is committed to the correctional institution to the end of the sentence imposed but not yet served. It asks what will be the effect of the sentence on the parent-child relationship. It is founded on a policy that parental rights may be ended when a parent has been sentenced to incarceration for a period of time that will significantly impair the parent-child relationship and does not require that the convicted parent actually serve the time imposed by the sentence and actually effect the rupture before the TPR issue can be raised in a court. The statute thus requires the court to assess whether that future period of time encompassed by the sentence just beginning "will [e.s.] constitute a substantial portion" of the child's remaining minority. Here, as we have seen, that period was about 15 months when the TPR case was filed, and only a handful of months remained when the case was tried. The issue is whether these months could qualify as a "substantial" part of the children's minority.
I do agree with DCF that the operative, statutory term is not meant to be exclusively a temporal measurement. If only a temporal measurement were intended, I should think the drafters might have said something like "a substantial fraction" or "a greater part" or some similar locution. Their use instead of the unadorned term "substantial" conveys a purpose to engage in a value-laden judgment of effect.
One of the standard meanings of substantial is "considerable in importance, value, degree... or extent."[2] Thus applying that standard meaning of subsection 39.806(1)(d)1's operative term, the court would have to find that these months were considerably important in the lives of these children to constitute a "substantial" portion of their minority. On the date of sentencing, the children were 5, 4 and 1. Even assuming (without deciding) that these months left to be served could qualify for children of these ages, the burden was on DCF to offer some evidence on which to base such a finding. Here such evidence was lacking.
I also agree that the sexual predator provisioneven though appropriate for the offense for which the father was convicted does not support a termination here. This conclusion arises from the peculiar wording of subsection 39.806(1)(d)2, which allows a termination of parental rights when the incarcerated parent "has been determined by the court [e.s.] to be a... sexual predator as defined in s. 775.21." There are two things about this highlighted text that occur to me.
The first has to do with the words "has been" before the verb, "determined." The grammarians would refer to this as the present perfect tense, in the passive voice, of the verb. The use of this verb construction by the Legislature means that the determination of sexual predator status must already be a completed act when DCF claims that the incarcerated parent's rights should be terminated. One should contrast that with the verb used in the immediately following part of subsection (1)(d), namely subsection (1)(d)3, where the statute says "[t]he court determines...." [e.s.] Here the verb tense is in the present indicative. With this latter construction of the verb, it is obvious that under subsection (1)(d)3, it is for the TPR court to determine whether the relationship would be harmful to the child. Under subsection (1)(d)2, however, where the *795 present perfect tense of the verb has been used, it is not for the TPR court to determine sexual predator status; that fact should have been already determined when the TPR case begins.
The second thing to consider about the subsection (1)(d)2 text lies in the term, "the court." Under the definition in section 39.01(18) "the court," unless otherwise expressly stated, refers to the court exercising power in a chapter 39 proceeding. Yet there is no provision in the Criminal Code or in chapter 39 for a court hearing a TPR case arising under chapter 39 to make a sexual predator designationexcept in subsection (1)(d)2. But under subsection (1)(d)2, as we have already seen, the sexual predator designation must have been already made by "the court" before a TPR case is even filed. If the determination must have been already made by a court before the TPR case is filed, this is obviously an instance where the Legislature has "otherwise expressly stated" that a court other than the chapter 39 court should do something. Hence it cannot possibly be the TPR court that is to make the sexual predator designation.
All of this creates an insurmountable ambiguity in subsection (1)(d)2. Because this statute operates like a penal statute we are obligated to interpret subsection (1)(d)2 on this subject in a way that favors the father. See City of Miami Beach v. Galbut, 626 So.2d 192, 194 (Fla.1993) (when statute imposes penalty, any doubt as to meaning must be resolved in favor of strict construction so that those covered by statute have clear notice of what conduct statute proscribes); State v. Llopis, 257 So.2d 17, 18 (Fla.1971) (same). It follows that the judge in the section 775.21 criminal proceeding is to determine whether the parent is a sexual predator. And so I agree that a termination of the father's parental rights cannot be sustained under subsections 39.806(1)(d)1 or (1)(d)2.
That however does not end this attempt to terminate the father's rights. In the petition to terminate, DCF also alleged that:
"The father ... is incarcerated in a state correctional institution[,] and pursuant to 39.806(1)(d)(3) [sic] continuance of the parental relationship with the father would be harmful to the children[,] and termination of the parental rights of the incarcerated parent is in the best interest of the children."
The statutory provision referred to in this pleading is the same subsection 39.806(1)(d)3, discussed above, and which provides for termination when:
"[t]he court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child and, for this reason, that termination of the parental rights of the incarcerated parent is in the best interest of the child."
There is evidence in the record relevant to the subsection (1)(d)3 allegation. The record shows, for example, that the father had previous convictions for burglary and arson and was incarcerated for these offenses before the children were born. There is also evidence that the father has had a longtime substance abuse problem.
Moreover the present conviction involved illicit sexual intercourse with a 14 year-old child. This offense was committed while this father and his three children (as well as their mother) were living as guests of another family. The victim was the daughter of the hosts who invited this father and his family to live with them. As a result of the father's lewd and lascivious conduct with his hosts' 14 year-old child, the father and his family were asked to leave the home, thereby resulting in the children living in the degradation and *796 squalor that caused DCF to shelter and place the children with foster parents.
Additionally, when the father completes his incarceration he is required to serve a period of probation during which he will not be allowed to be in the company of minor children outside his family. That means that his children will be severely restricted in having friends visit and stay the night. The state argued that this will also have an adverse effect on the development of these children.
During closing argument, DCF specifically argued that the court should make a finding under subsection 39.806(1)(d)3. DCF contended that the evidence clearly and convincingly supported a finding of the risk of future harm to the children if the parental ties were not terminated. In spite of this issue having been expressly alleged in the petition and argued in closing argument, the trial court failed to make any finding as to the claimed termination under subsection 39.806(1)(d)3. As this issue has been thus left unresolved by the final order, I would remand this case to the trial court to make a determination on this claim.[3] Because considerable time has elapsed since this case was tried, I would allow the parties to present additional evidence and further argument as to this issue only. It follows that either party should have the right to seek review of the trial court's final determination as to this issue.
NOTES
[1] We cannot agree with Judge Farmer that the trial court could now grant relief under section 39.806(1)(d)3, which applies only to an "incarcerated parent." Appellant is no longer incarcerated.
[2] AMERICAN HERITAGE DICTIONARY 1791 (3d ed.1992).
[3] The majority brushes aside this issue by holding that the release of the father from incarceration during the pendency of this appeal renders impossible any termination now on the basis of subsection 39.806(1)(d)3. Because this issue has not been addressed by the parties or trial court, however, I do not agree that it is either appropriate or seemly for us to decide it in the first instance.