872 So.2d 924 (2004)
In the Interest of E.I.F., a child.
J.H., Appellant,
v.
Department of Children and Family Services, Appellee.
No. 2D02-5133.
District Court of Appeal of Florida, Second District.
March 12, 2004.
Rehearing Denied May 27, 2004.
*925 Alyssa L. Katz of Michael P. Maddux, P.A., Tampa, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Tanya E. DiFilippo, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
J.H., the Father, seeks review of the trial court's order adjudicating E.I.F. dependent and terminating his parental rights to E.I.F. The Father does not challenge the adjudication of dependency but argues that the trial court erred in terminating his parental rights pursuant to section 39.806(1)(c), (1)(d)(1), (1)(d)(3), and (1)(f), Florida Statutes (2002). We affirm the adjudication of dependency and reverse the termination of parental rights.
E.I.F. was born on November 24, 2001, and sheltered by the Department of Children and Family Services (the Department) two days later based on allegations of the Mother's continuing involvement with the Department and the pending termination of parental rights of the Mother's *926 other children.[1] The Father was incarcerated at the time of E.I.F.'s birth and was not identified as the Father of E.I.F. until February 2002.[2] In March 2002, the Department filed a petition for termination of parental rights as to both parents. The petition alleged that termination was proper under section 39.806(1)(c), (1)(d)(1), (1)(d)(3), and (1)(f).
At the time of the trial, E.I.F. was almost eight months old. The Department had placed E.I.F. in the custody of the Father's sister, who is seeking adoption. The Mother consented to the termination of her parental rights.
The Father testified that he had been incarcerated for the past year and two months. He was incarcerated for violating probation by failing to attend an appointment with his probation officer, failing to complete his community service hours, and failing to pay restitution on an aggravated battery or aggravated assault charge that occurred in 1998 or 1999. He also admitted he had been in prison in 1994 for aggravated assault or aggravated battery of a law enforcement officer.
The Father testified that he was willing to pay child support for E.I.F. and expressed an interest in becoming involved in E.I.F.'s life. The Father had previously contacted his sister to request photographs of E.I.F. He explained that with credit for gain time, he expects to be out in 2007.
The Department of Corrections submitted reports listing the Father's tentative release date from prison as March or June 2010. The Father's "85% Release Date" was listed as December 8, 2008.
The Father's ex-wife, who is not the mother of E.I.F., testified that the Father's drug use contributed to their divorce in 1991 or 1992 and that he did not deal well with the divorce. On one occasion the Father threatened suicide in front of the ex-wife and their two young children. On another occasion, the Father threatened to burn the house down and harm her or the children if any more child support was taken out of his paycheck. The ex-wife only received child support for approximately the first year and a half after their divorce. The Father had virtually no involvement with their children when he was not incarcerated. However, when he was incarcerated, the Father sent the children cards and called monthly to speak with the children. She testified that the Father is a good person but that his priorities are mixed up.
The Father testified that he received six months of psychiatric treatment at Northside Psychiatric Hospital after the suicide threat. In 1994 he voluntarily entered drug treatment in prison and he testified that he has not used drugs since. The record does not contain any evidence of suicidal tendencies since the incident in 1991 or 1992. In fact, the record does not contain any evidence of any violent acts committed by the Father towards or in front of his two older children since that incident. Regardless, the trial court found that the Father's conduct towards his older children constituted clear and convincing evidence to support termination under section 39.806(1)(c), (1)(d)(3), and (1)(f).
Section 39.806(1)(c) provides for termination of parental rights when the Department proves by clear and convincing evidence that the parent "engaged in conduct toward ... other children that demonstrates that the continuing involvement of the parent or parents in the parent-child *927 relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services." The trial court found that clear and convincing evidence supported termination of the Father's parental rights to E.I.F. under this section based on the Father's suicide threat, threats toward his other children, drug use, and his failure to maintain a relationship with his other children or pay child support.
While this evidence does show conduct towards the Father's other children that demonstrated that the Father's continuing involvement would have been detrimental to those children in the early 1990s before his treatment, it does not support the trial court's finding of clear and convincing evidence that the Father's continuing involvement with a child who was born almost ten years later to a different mother would be detrimental to that child and threaten the child's life, safety, or well-being. See D.S. v. Dep't of Children & Families, 842 So.2d 1071, 1072 (Fla. 4th DCA 2003) (holding that a court may not terminate parental rights based on a parent's criminal history absent evidence linking the criminal acts to the child's well-being); L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1194 (Fla. 1st DCA 2002) (holding that the trial court erred in terminating the mother's parental rights under section 39.806(1)(c) based on her domestic violence against the father when she had received treatment for same, had been taking her medication, and the parties had separated).
Certainly if the Father was suicidal at present, E.I.F.'s safety or well-being might be threatened; however, the Father received psychological treatment after his suicide threat, and there is no evidence of any suicidal or violent acts of the Father in front of or toward any of his children for almost a decade. Likewise, the Father testified that he received drug treatment in 1994 and there is no evidence of drug use by the Father since. Finally, the Father's failure to pay child support for or to maintain a relationship with his older children does not support the trial court's finding of clear and convincing evidence of conduct that would "threaten[ ] the life, safety, well-being, or physical, mental, or emotional health of the child."
For the same reasons that the Father's conduct towards his older two children does not support the trial court's finding of clear and convincing evidence "that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child," it does not support the trial court's finding of clear and convincing evidence "that continuing the parental relationship with the incarcerated parent would be harmful to the child" under section 39.806(1)(d)(3), or of "egregious conduct ... that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling" under section 39.806(1)(f). Thus, the trial court erred in terminating the Father's parental rights under section 39.806(1)(c), (1)(d)(3), and (1)(f).
The trial court also based its termination on section 39.806(1)(d)(1), which provides for termination of parental rights if the Department proves by clear and convincing evidence that the parent is incarcerated and the time of incarceration will be a "substantial portion of the period of time before the child will attain the age of 18 years." The trial court terminated the Father's parental rights under this section based on its finding that the Father will be incarcerated for the first eight years of E.I.F.'s minority. The court explained,
In other words, it is the first eight years of his life, when he will be learning to talk, learning to walk, learning to eat, *928 starting school, and learning to read. Experiencing those milestones without having ever met his father or had any personal contact with him is a substantial portion of the child's minority, though admittedly, not a majority of the time before he reaches the age of 18.
However, the trial court is not to consider the quality of the time, but "only the length of time the parent will be incarcerated in determining whether that period constitutes a `substantial portion of the period of time' before the child reaches age eighteen." J.W. v. Dep't of Children & Family Servs. (In re A.W.), 816 So.2d 1261, 1264 (Fla. 2d DCA 2002). The inquiry is "whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen." J.P.C. v. Dep't of Children & Family Servs. (In re J.D.C.), 819 So.2d 264, 266 (Fla. 2d DCA 2002). But see Dep't of Children & Family Servs. v. B.C., 28 Fla. L. Weekly D2009, ___ So.2d ___, 2003 WL 22014737 (Fla. 4th DCA Aug.27, 2003) (holding that the time a parent has been incarcerated in the past should be considered under section 39.806(1)(d)(1) and certifying conflict with In re J.D.C. on this issue), review granted, 860 So.2d 976 (Fla. 2003).
The trial court's finding that the Father will be incarcerated for eight years[3] does not support its finding of clear and convincing evidence of incarceration for a "substantial portion of time" before E.I.F., who was only eight months old at the time of the trial, reaches eighteen. Cf. In re A.W., 816 So.2d at 1263 (holding that incarceration for fifty-four months will not constitute a substantial portion of the remaining minority of a four-year-old or one-year-old child). The period of incarceration will not even constitute half of the time before E.I.F. reaches majority. Therefore, the trial court also erred in terminating the Father's parental rights under section 39.806(1)(d)(1).
The dissent would rely on the Fourth District's decision in B.C., 28 Fla. L. Weekly D2009, ___ So.2d ___, to support its determination that the length of the Father's incarceration will constitute a substantial portion of the time period before the child reaches eighteen. However, as noted above, the Fourth District considers the time a parent has been incarcerated in the past, while this court considers only the future period of incarceration. In B.C., the Fourth District held that a period of incarceration of seven years and nine months was sufficient to support termination under section 39.806(1)(d)(1), but it is not clear how much of this term was future incarceration. Id. at D2009, ___ So.2d at ___. Regardless, for the reasons stated above, we disagree with the Fourth District's conclusion that incarceration for seven years and nine months constitutes a substantial portion of the time before a child who is three months old reaches eighteen.
Because none of the cited grounds support termination of the Father's parental rights, we reverse the portion of the order terminating the Father's parental rights.
Affirmed in part, reversed in part, and remanded.
WALLACE, J., Concurs.
SILBERMAN, J., Concurs in part and dissents in part.
SILBERMAN, Judge, Concurring in part and dissenting in part.
For the reasons stated in the majority's opinion, I agree that the trial court erred in terminating the Father's parental rights under section 39.806(1)(c), (1)(d)(3), and *929 (1)(f), Florida Statutes (2002). However, I disagree with the majority's conclusion that the trial court erred in terminating the Father's parental rights under section 39.806(1)(d)(1).
Section 39.806(1)(d)(1) states that the Department of Children and Family Services may petition the court for termination of parental rights when the parent is incarcerated and "[t]he period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years." A trial court must "evaluate whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen." J.P.C. v. Dep't of Children & Family Servs. (In re J.D.C.), 819 So.2d 264, 266 (Fla. 2d DCA 2002).
Although the Father was incarcerated before the child was born,[4] the pertinent period of incarceration is ninety-two months, computed from the termination hearing on July 22, 2002, to an anticipated release date of March 17, 2010.[5] From the termination hearing until the child turns eighteen, the amount of time is 208 months. Thus, the period of incarceration compared to the period of time from the termination hearing until the child turns eighteen is slightly more than 44% of the child's life.[6] In my view, the Father's incarceration for 44% of the child's life to age eighteen constitutes a substantial portion of the relevant time frame within the meaning of section 39.806(1)(d)(1).
In Department of Children & Family Services v. B.C., 28 Fla. L. Weekly D2009, ___ So.2d ___ (Fla. 4th DCA Aug.27, 2003), review granted, 860 So.2d 976 (Fla. 2003), the Fourth District considered a similar situation, involving a seven-year, nine-month sentence.[7] There, if the father were released on his projected release date, the child would be eight years old and the father would have been out of prison for only three months of the child's life. The court discussed the statutory language and stated that "[t]he term used in the statute, `substantial' means `considerable in importance, value, degree, amount, or extent.'" Id. at D2009, ___ So.2d at ___(quoting The American Heritage Dictionary of the English Language 1284 (1981)). It concluded that the seven-year, nine-month period of incarceration was a substantial portion of the time period before the child would turn eighteen and warranted termination of the father's rights under section 39.806(1)(d)(1).
*930 Here, the trial court's analysis of the Father's incarceration is consistent with B.C. When the Father is released the child will be over eight years old and the Father will have been imprisoned for all of the child's life to that point in time. The difference in the length of incarceration is one month less than the time involved in B.C., which I do not believe to be sufficient to change the outcome.
The majority notes that the period of incarceration involved in this case does not constitute half of the time before the child reaches majority. However, in section 39.806(1)(d)(1) the legislature did not create a bright-line rule to fit every case. Based on the language of the statute, I cannot agree that the trial court erred in finding that termination is warranted when the Father's period of incarceration constitutes 44% of the child's life to the age of eighteen. Although 44% does not constitute half of the time before the child's majority, it is, as contemplated by the statute, a substantial portion of the period of time before the child reaches the age of majority.
Once a trial court concludes that the future period of incarceration is a sufficient basis to support termination, then it must consider the child's manifest best interests. See § 39.810. Here, the trial court considered all of the statutory best interest factors, and the record contains ample evidence to support the trial court's conclusion that termination is in the child's manifest best interests. The trial court made detailed findings, as follows: (1) there is a suitable permanent custody arrangement with a relative; (2) the Father did not show a disposition to provide for the needs of his other children, and due to his prior incarceration as well as his current incarceration, he does not have the ability to provide for this child's needs; (3) the Father "does not have the capacity to care for [the child] to the extent that [the child's] safety, well-being, physical, mental, or emotional health would not be endangered if he were to return home to [the Father] once [the Father] was released from incarceration"; (4) the child has no extraordinary needs; (5) because of the child's young age, he would not be harmed by termination, particularly as the mother surrendered her parental rights and the child has not known his father nor met any of his siblings; (6) the child has bonded with his aunt, and it is extremely likely he will enter a more stable and permanent family relationship as a result of termination; (7) the child's current living arrangement is a stable, satisfactory environment, there is a high desirability in maintaining that continuity, and the placement has been for a significant portion of the child's life; and (8) the guardian ad litem recommends termination.
Based on the record before us, I cannot agree with the majority's decision concerning termination under section 39.806(1)(d)(1). I conclude that the trial court properly found that the Father's lengthy period of incarceration and the child's manifest best interests warranted termination.[8] Therefore, I would affirm the termination order.
NOTES
[1] These children were not the Father's children.
[2] Results of a paternity test indicating that J.H. was the Father of E.I.F. were filed with the court on April 22, 2002. E.I.F.'s birth certificate does not list a father.
[3] Eight years represents the time between the July 2002 trial and June 2010, which is the latest possible release date for the Father based on Department of Corrections reports.
[4] At the time of the termination hearing, the child was eight months old. The Father was not listed on the child's birth certificate, but he testified that even before the child's birth on November 24, 2001, he believed that he was the father.
[5] The record contains information from the Department of Corrections showing two tentative release dates: March 17, 2010, and June 8, 2010. The time computations discussed herein rely on the earlier date, which is to the Father's benefit. Although potential gaintime may possibly result in the Father being released as early as December 2008, that possible release date is not taken into account because of the uncertainties involved with gaintime.
[6] The percentage is derived by dividing ninety-two months (the future period of incarceration) by 208 months (the time period from the termination hearing to the date the child turns eighteen).
[7] In B.C., the Fourth District certified conflict with this court's decisions in In re J.D.C. and J.W. v. Department of Children & Family Services (In re A.W.), 816 So.2d 1261 (Fla. 2d DCA 2002). The Fourth District uses the entire period of incarceration, whereas this court only considers the future period of incarceration. For the purpose of the foregoing computations, only the future period of incarceration was considered. If the Fourth District's method of computation were used, the figure for the Father's period of incarceration would be greater than ninety-two months.
[8] Potentially, the best interests analysis may lead a trial court to deny termination even though the period of incarceration is sufficient to meet the statutory threshold. For example, the result in a situation where the parent and child have formed a substantial and abiding bond before the parent's incarceration could differ from the result in a situation, such as the present one, where the Father and the child had formed no bond prior to the Father's incarceration. Based on the record before us, I find no fault with the trial court's analysis of the child's best interests.