NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PATRICK F., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., *Appellees*.

No. 1 CA-JV 16-0151
FILED 9-20-2016

Appeal from the Superior Court in Maricopa County
No. JD29635
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

---

**B R O W N**, Chief Judge:

¶1            Patrick F. ("Father") appeals the juvenile court's order terminating his parental rights. Father argues that given the relatively short length of his prison sentence and his close relationship with his daughter, the court erred as a matter of law when it determined the Department of Child Safety ("DCS") met its burden of proof. Because we conclude that the court's severance order is supported by reasonable evidence, we affirm.

**BACKGROUND**

¶2            Father and Guadalupe S. ("Mother") are the biological parents of A.S., born in 2011.[1] In August 2014, DCS received a report that Mother was abusing drugs and neglecting her children, including A.S.[2] Father's whereabouts were unknown to Mother at the time, but shortly thereafter he began helping to take care of A.S. at his brother-in-law's home. In early October, Father had to leave the home after being involved in a domestic violence incident with Mother.

¶3            Father was arrested on December 14, 2014 for arson and burglary. Around that same time, A.S.'s maternal grandmother called DCS to report that Mother had been arrested and A.S. had been left in grandmother's care without basic necessities. On December 18, DCS filed a petition for dependency, alleging A.S. was dependent as to Mother and Father based on substance abuse and neglect. Regarding Father, DCS alleged he neglected A.S. by (1) failing to provide for basic needs including food, shelter, clothing, and medical care; and (2) abusing drugs and alcohol. DCS alleged further that Father had neglected A.S. due to abandonment

---

[1]       The juvenile court also terminated Mother's parental rights, but she is not a party to this appeal.

[2]       Father is not the biological parent of Mother's other children.

because he failed to establish a normal parent-child relationship and had not seen or supported her for an extended period of time.

¶4          In March 2015, Father pled guilty to arson of a structure or property, a class 4 felony, and was sentenced to two and one half years' imprisonment with an expected release date of February 6, 2017, and an early release date of November 21, 2016.

¶5          DCS served Father in jail with the dependency petition and notice of hearing, but he did not appear at the initial dependency hearing. The juvenile court found that Father failed to appear with no good cause and the allegations of the dependency petition were deemed admitted against him. The court therefore determined that A.S. was dependent as to Father. At a subsequent status conference in June 2015, the court gave Father the opportunity to contest the dependency petition because he was in custody at the time of the initial dependency hearing. After discussion, Father chose to waive his right to challenge the allegations of the dependency petition and the court affirmed its prior findings. Father requested that he be permitted to write letters to A.S., and have phone contact with her. DCS raised no objection.

¶6          In August 2015, DCS filed a motion for termination based on the length of Father's prison sentence under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(4). The juvenile court conducted a severance hearing in March 2016, and heard testimony from the assigned case manager, Father, and the maternal grandmother. Following closing arguments from counsel, the court granted the motion, finding DCS had proven by clear and convincing evidence that Father had been deprived of his civil liberties due to his felony conviction and his sentence was of such length that A.S. will be deprived of a normal home for a period of years. The court also found that termination was in A.S.'s best interests. A formal order was filed and this timely appeal followed.

## DISCUSSION

¶7          In order to terminate parental rights, the juvenile court must find at least one statutory ground is supported by clear and convincing evidence and that termination is in the child's best interests. [3] *Linda V. v.*

---

[3]          The juvenile court also found that severance would be in A.S.'s best interests because A.S. is placed with her maternal grandmother, who has provided a permanent, stable, drug-free home, and has continuously

*Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 6 (App. 2005) (citation omitted). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citation omitted). Accordingly, we view the facts in the light most favorable to affirming the juvenile court's order "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997) (citation omitted).

¶8 In support of its motion to terminate based on length of incarceration, DCS was required to prove that Father was deprived of his civil liberties due to his felony conviction and his sentence "is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4). Explaining that A.R.S. § 8-533(B)(4) does not establish a "bright line" definition as to "when a sentence is sufficiently long to deprive a child of a normal home for a period of years," our supreme court has directed the juvenile court to consider all relevant factors, including, but not limited to the following:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251-52, ¶ 29 (2000).

¶9 Father argues the juvenile court erred in granting the motion for termination because he was the primary caretaker of A.S. for several months prior to his incarceration and thus had developed a "close relationship" with her. The record, however, fails to support Father's assertion. As to the first three years of A.S.'s life, the record is virtually silent as to Father's involvement in her life. Father testified that "at some point" prior to August 2014, he and Mother and A.S. lived "as a family." He also testified that he provided financial support for A.S. "all through her life" until the beginning of October 2014, even though Mother reported in

---

provided for the child's needs. Father has not challenged the court's best interests finding.

August 2014 that she did not know Father's whereabouts. The record is silent as to any other evidence supporting Father's assertion that he had a close relationship with A.S. before he was incarcerated. Although Father took primary responsibility for the care of A.S. for approximately two months starting in August 2014, testimony at the severance hearing revealed he was abusing alcohol during that time and, as the juvenile court found, up until the time of incarceration was "under the haze of drugs and alcohol." Moreover, Father was asked to leave his brother-in-law's home, where the child was residing, due to a domestic violence incident in which he struck Mother.

¶10        Father also asserts that his relationship with A.S. could be maintained during his incarceration. Regardless of whether his relationship with A.S. *could have* been maintained, Father did very little to maintain or nourish it. Maternal grandmother testified that she received only one letter for A.S. from the time Father was incarcerated through the date of the severance hearing, even though Father stated he had tried to send letters, cards, and gifts but they were returned to him. And the case manager testified that no visits or telephone contact had occurred between A.S. and Father. Moreover, Father offered no evidence showing how visitation or other involvement with A.S. could occur during the remainder of his incarceration. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451, ¶17 (App. 2007) (explaining that mother offered no evidence regarding "individuals who could care for the children and facilitate visitation with her in order to nurture the parent-child relationship while she was incarcerated").

¶11        Father next points to his "relatively short sentence," contending that if two and a half years is sufficient to satisfy the "period of years" requirement under A.R.S. § 8-533(B)(4), then "virtually any sentence will ultimately justify severances." We acknowledge that a two-and-a-half-year sentence may not deprive a child of a normal home in all cases. *See Jeffrey P. v. Dep't of Child Safety*, 239 Ariz. 212, 215, ¶15 (App. 2016) ("Nothing in this Opinion should be taken to mean that a sentence of 2.5 years, as a matter of law, will suffice to support severance pursuant to § 8–533(B)(4).") But we disagree that a decision affirming the juvenile court's decision in this case would justify termination based on *any* length of sentence. The statute's plain language requires that the sentence be for a term of "years," which necessarily means at least two years. A.R.S. § 8-533(B)(4). More importantly, as directed by our supreme court, the circumstances of each case must be evaluated in light of all relevant factors. *See Michael J.*, 196 Ariz. at 251, ¶ 29.

¶12         A.S. was just three years old when Father was incarcerated and will be five-and-a-half at Father's maximum end date (February 6, 2017).  Father will have been incarcerated for nearly half of A.S.'s life—depriving A.S. of a normal home life in the meantime.[4]  *See Maricopa Cty. Juvenile Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986) (explaining that the "normal home" referred to in A.R.S. § 8-533(B)(4) relates to the incarcerated parent's "obligation to provide a normal home, a home in which the respondent natural father has a presence").  Moreover, Father admitted he has a substance abuse problem, and even though he has participated in a drug treatment program while imprisoned, he acknowledged he would not be able to take care of A.S. without additional treatment upon his release.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 8 (App. 2002) (stating that the legislature's use of the words "will be deprived" in § 8-533(B)(4) means "'will have been deprived' in total, intending to encompass the entire period of the parent's incarceration and absence from the home.").

¶13         Father's lack of presence in the home had even greater impact on A.S., given Mother's now-permanent absence.  Under the circumstances, Father acknowledged that A.S. has been deprived of a "normal home" for over two years because of his incarceration." Nothing in the record suggests that A.S. ever had a normal home from the time she was born until Father's incarceration, because even during the brief period of time Father spent at his brother-in-law's home taking care of A.S., he was abusing drugs and alcohol.

¶14         Finally, to the extent Father suggests the juvenile court erred by failing to consider his early release date, we disagree.  Nothing in A.R.S. § 8-533(B)(4) requires a court to consider only the early release date in

---

[4]         Father cites *S.B. v. Dep't of Children & Families*, 132 So.3d 1243 (Fla. App. 2014), to shed light on the meaning of "period of years."  The court in *S.B.* noted that based on a former statutory scheme, a four-year incarceration period was insufficient to support severance of parental rights.  *Id.* at 1246.  Applying the new statute, which requires a trial court to evaluate several factors in determining the impact a particular sentence has on the parent-child relationship, the appellate court found that four years was insufficient to support terminating the father's parental rights.  *Id.* at 1245.  Unlike the present case, the father in *S.B.* made significant efforts to maintain a relationship with his daughters during his incarceration, including sending them fifty letters over a sixteen-month period and supporting them financially, prior to incarceration.  *Id.* at 1244.

determining whether a child has been deprived of a normal home for a period of years. *See Jeffrey P.*, 239 Ariz. at 214, ¶ 10 (noting that when a court addresses the incarceration ground for termination of parental rights, the court is not required to presume an early release).

¶17 After considering the evidence presented to the juvenile court in light of the *Michael J.* factors, we conclude that reasonable evidence supports the juvenile court's finding that DCS met its burden of showing the length Father's sentence has deprived A.S. of a normal home for a period of years pursuant to A.R.S. § 8-533(B)(4).

**CONCLUSION**

¶20 We affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA