SILBERMAN, Judge,
Concurring in part and dissenting in part.
For the reasons stated in the majority’s opinion, I agree that the trial court erred in terminating the Father’s parental rights under section 39.806(l)(c), (l)(d)(3), and *929 (l)(f), Florida Statutes (2002). However, I disagree with the majority’s conclusion that the trial court erred in terminating the Father’s parental rights under section 39.806(l)(d)(l).
Section 39.806(l)(d)(l) states that the Department of Children and Family Services may petition the court for termination of parental rights when the parent is incarcerated and “[t]he period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years.” A trial court must “evaluate whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen.” J.P.C. v. Dep’t of Children & Family Servs. (In re J.D.C.), 819 So.2d 264, 266 (Fla. 2d DCA 2002).
Although the Father was incarcerated before the child was born,[4] the pertinent period of incarceration is ninety-two months, computed from the termination hearing on July 22, 2002, to an anticipated release date of March 17, 2010.[5] From the termination hearing until the child turns eighteen,. the amount of time is 208 months. Thus, the period of incarceration compared to the period of time from the termination hearing until the child turns eighteen is slightly more than 44% of the child’s life.[6] In my view, the Father’s incarceration for 44% of the child’s life to age eighteen constitutes a substantial portion of the relevant time frame within the meaning of section 39.806(l)(d)(l).
In Department of Children & Family Services v. B.C., 28 Fla. L. Weekly D2009, — So.2d - (Fla. 4th DCA Aug.27, 2003), review granted, 860 So.2d 976 (Fla. 2003), the Fourth District considered a similar situation, involving a seven-year, nine-month sentence.[7] There, if the father were released on his projected release date, the child would be eight years old and the father would have been out of prison for only three months of the child’s life. The court discussed the statutory language and stated that “[t]he term used in the statute, ‘substantial’ means ‘considerable in importance, value, degree, amount, or extent.’ ” Id. at D2009, — So.2d at —— (quoting The American Heritage Dictionary of the English Language 1284 (1981)). It concluded that the seven-year, nine-month period of incarceration was a substantial portion of the time period before the child would turn eighteen and warranted termination of the father’s rights under section 39.806(l)(d)(l).
*930 Here, the trial court’s analysis of the Father’s incarceration is consistent with B.C. When the Father is released the child will be over eight years old and the Father will have been imprisoned for all of the child’s life to that point in time. The difference in the length of incarceration is one month less than the time involved in B.C., which I do not believe to be sufficient to change the outcome.
The majority notes that the period of incarceration involved in this case does not constitute half of the time before the child reaches majority. However, in section 39.806(l)(d)(l) the legislature did not create a bright-line rule to fit every case. Based on the language of the statute, I cannot agree that the trial court erred in finding that termination is warranted when the Father’s period of incarceration constitutes 44% of the child’s life to the age of eighteen. Although 44% does not constitute. half of the time before the- child’s majority, it is, as contemplated by the statute, a substantial portion of the period of time before the child reaches the age of majority.
Once a trial court concludes that the future period of incarceration is a sufficient basis to support termination, then it must consider the child’s manifest best interests. See § 39.810. Here, the trial court considered all of the statutory best interest factors, and the record contains ample evidence to support the trial court’s conclusion that termination is in the child’s manifest best interests. The trial court made detailed findings, as follows: (1) there is a suitable permanent custody arrangement with a relative; (2) the Father did not show a disposition to provide for the needs of his other children, and due to his prior incarceration as well as his current incarceration, he does not have the ability to provide for this child’s needs; (3) the Father “does not have the capacity to care for [the child] to the extent that [the child’s] safety, well-being, physical, mental, or emotional health would not be endangered if he were to return home to [the Father] once [the Father] was released from incarceration”; (4) the child has no extraordinary needs; (5) because of the child’s young age, he would not be harmed by termination, particularly as the mother surrendered her parental rights and the child has not known his father nor met any of his siblings; (6) the child has bonded with his aunt, and it is extremely likely he will enter a more stable and permanent family relationship as a result of termination; (7) the child’s current living arrangement is a stable, satisfactory environment, there is a high desirability in maintaining that continuity, and the placement has been for a significant portion of the child’s life; and (8) the guardian ad litem recommends termination.
Based on the record before us, I cannot agree with the majority’s decision concerning termination under section 39.806(l)(d)(l). I conclude that the trial court properly found that the Father’s lengthy period of incarceration and the child’s manifest best interests warranted termination.[8] Therefore, I would affirm the termination order.

. At the time of the termination, hearing, the child was eight months old. The Father was not listed on the child’s birth certificate, but he testified that even before the child’s birth on November 24, 2001, he believed that he was the father.

. The record contains information from the Department of Corrections showing two tentative release dates: March 17, 2010, and June 8, 2010. The time computations discussed herein rely on the earlier date, which is to the Father’s benefit. Although potential gaintime may possibly result in the Father being released as early as December 2008, that possible release date is not taken into account because of the uncertainties involved with gaintime.

. The percentage is derived by dividing ninety-two months (the future period of incarceration) by 208 months (the time period from the termination hearing to the date the child turns eighteen).

. In B.C., the Fourth District certified conflict with this court’s decisions in In re J.D.C. and J.W. v. Department of Children & Family Services (In re A.W.), 816 So.2d 1261 (Fla. 2d DCA 2002). The Fourth District uses the entire period of incarceration, whereas this court only considers the future period of incarceration. For the purpose of the foregoing computations, only the future period of incarceration was considered. ' If the Fourth District's method of computation were used, the figure for the Father’s period of incarceration would be greater than ninety-two months.

. Potentially, the best interests analysis may lead a trial court to deny termination even though the period of incarceration is sufficient to meet the statutory threshold. For example, the result in a situation where the parent and child have formed a substantial and abiding bond before the parent’s incarceration could differ from the result in a situation, such as the present one, where the Father and the child had formed no bond prior to the Father's incarceration. Based on the record before us, I find no fault with the *931 trial court's analysis of the child's best interests.