KELLY, Judge.
J.P.C. challenges an order terminating his parental rights to J.D.C. Because the Department of Children and Family Services (the Department) failed to prove the grounds for termination by clear and convincing evidence, we reverse.
J.D.C. was born on January 5, 1998. Two days later, the Department filed a dependency shelter petition on the infant, who tested positive for cocaine at birth. At a hearing on January 7, 1998, the court ordered the child sheltered with his maternal grandmother. Although the shelter order stated that the identity of the child’s father was unknown, the mother, while still in the hospital, had provided the Department’s investigator with the names of two potential fathers, one of whom was J.P.C. Additionally, at the January 7 shelter hearing, the mother formally executed a paternity affidavit naming J.P.C.. as the father.
On March 18, 1998, the Department requested that the court place the child in long-term custody with the grandmother and terminate supervision. In its petition, the Department asserted that the identity of J.D.C.’s father was unknown. In May 1998, the court granted the petition, and the Department terminated supervision over J.D.C. The Department did not try to locate J.P.C. Had the Department performed the “diligent search” it was re: quired by law to perform, it would have found J.P.C. because he was incarcerated when J.D.C. was born.[1]
When J.P.C. was released in March 1998, he had no indication that the Department had been involved in the placement of J.D.C. with the grandmother. Between March and August 1998,. J.P.C. visited J.D.C. at the grandmother’s house. He also provided some support for the child as he had done before the child was born. J.P.C. was rearrested in August, and he ultimately received a sentence of incarceration with a discharge date of October 2001. While incarcerated, he maintained communication with J.D.C. by writing the grandmother and sénding cards and pictures to J.D.C.
Shortly before J.D.C.’s third birthday, the Department filed a dependency shelter petition alleging that the grandmother had tested positive for cocaine and that the grandmother’s home was unfit. The court granted the petition and placed J.D-.C. with foster parents. At this point, the Department recommended a case plan with a goal of adoption, and the court authorized initiation of a termination of parental rights petition. This case plan named J.P.C. as the putative father, but it did not assign any tasks to him. It was not until after the case plan was prepared that the Department first contacted J.P.C.
*266 J.P.C.’s initial contact from the Department came in the form of a letter dated' November 6, 2000, nearly three years after he was named as the father, and only six months before the termination hearing. J.P.C. immediately wrote the Department and stated that he wanted to participate in his child’s life, that he wanted a paternity test, and that he had kept in contact with the child. His letter reached the Department on November 15 — two days after the court approved a case plan with a goal of adoption and termination of J.P.C.’s parental rights.
On December 11, 2000, the Department filed its petition for termination of parental rights. The Department asserted four grounds for termination in its petition: conduct threatening the life or well-being of the child, noncompliance with the case plan, egregious conduct, and incarceration. The trial court terminated J.P.C.’s parental rights after concluding that the Department had proved each ground except the failure to complete a case plan. The trial court also found that it was in the best interest of J.D.C. to terminate J.P.C.’s parental rights.
On appeal, J.P.C. first contends that the Department failed to establish grounds for termination under section 39.806(l)(d)(l), Florida Statutes (2000). Section 39.806(l)(d)(l) provides that the Department may petition for the termination of parental rights when the parent of a child is incarcerated and the “period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years.” The trial court found that J.P.C. had been incarcerated for “a substantial portion of said child’s life.”[2] The statute, however, requires the court to evaluate whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen, not whether the time the parent has been incarcerated in the past is a substantial portion of the child’s life to date. J.P.C. was scheduled to be released within a few months of the termination hearing. Because that period of time is not a substantial portion of the fifteen years before J.D.C. would reach eighteen, the trial court 'could not terminate J.P.C.’s rights' under that provision of the statute.
The Department argues that the trial court actually intended to find grounds for termination under section 39.806(l)(d)(3), which provides for termination if the court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child. However, the Department offered no evidence that continuing the parental relationship with J.P.C. would be harmful to the child. The Department’s failure to offer evidence regarding the impact of continuing the relationship precludes termination on this basis.
The Department also sought termination of J.P.C.’s rights under section 39.806(l)(c), which provides for termination when a parent has engaged in conduct toward the child that demonstrates that the continuing involvement of the parent in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. To terminate parental rights under this section, the trial court must find that the child’s life, safety, well-being, or physical, *267 mental, or emotional health would be threatened by continued interaction with the parent regardless of any services provided to the parent. R.W.W. v. Dep’t of Children & Families, 788 So.2d 1020, 1023 (Fla. 2d DCA 2001). In this case, the trial court made no finding that it would be futile to provide services to J.P.C. or that J.D.C. would be harmed even if services were provided, and the Department offered no evidence that would have supported such a finding. In the absence of such evidence, we cannot sustain termination on this ground. Id.
The Department also argued for termination under section 39.806(1)(f), which provides for termination when a parent has engaged in egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child. Specifically, the Department argued that J.P.C. had abandoned and neglected J.D.C. While abandonment and neglect constitute egregious conduct under section 39.806(1)(f), after reviewing the evidence in the record, we conclude that the Department failed to prove either abandonment or neglect by clear and convincing evidence. Id. The record shows that J.P.C. maintained communication with the child through the grandmother. Although he may have been unable to provide emotional or financial support while incarcerated, that failure was not willful but was the result of his incarceration. A finding of abandonment was improper on these facts. See W.W. v. Dep’t of Health & Rehabilitative Servs., 498 So.2d 946 (Fla.1986).
For the reasons stated in this opinion, we must reverse the trial court’s order terminating J.P.C.’s parental rights. Our reversal is based on the state of the record at the time this case came to our court. On remand, the Department must consider whether, in light of this opinion and the facts as they exist after remand, to offer J.P.C. a case plan with a goal of reunification. If circumstances exist after remand that satisfy the statutory requirements for termination without such a plan, the Department may proceed accordingly. If the Department offers J.P.C. a case plan and he fails to comply, the Department may again petition to terminate his parental rights.
Reversed and remanded.
BLUE, C.J., and WHATLEY, J., Concur.

. Under section 39.503, Florida Statutes (2000), the Department is required to perform a diligent search for a prospective parent. See § 39.503(5), (6).

. We note that the trial court also found that J.P.C. had been convicted of armed robbery when he, in fact, had been convicted of robbery without a weapon.