887 So.2d 1046 (2004)
B.C., the father, Petitioner,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, Respondent.
No. SC03-1632.
Supreme Court of Florida.
September 23, 2004.
Rehearing Denied November 11, 2004.
*1047 Frank A. Kreidler, Lake Worth, FL, for Petitioner.
Jeffrey Dana Gillen and Crystal Y. Yates-Hammond, West Palm Beach, FL, for Respondent.
PER CURIAM.
This case concerns termination of the parental rights of a person serving a prison sentence. We are called upon to construe section 39.806(1)(d)(1), Florida Statutes (2003), which provides, in pertinent part:
(1) The department ... may petition for the termination of parental rights under any of the following circumstances:
....
(d) When the parent of a child is incarcerated in a state or federal correctional institution and ...:
1. The period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years.
The certified conflict issue is whether this provision requires consideration of "the entire period of incarceration, or only the period to be served after the petition for termination is filed." Dep't of Children & Family Servs. v. B.C., 884 So.2d 955, 955 (Fla. 4th DCA 2003). The Fourth District concluded that the entire period is the correct measurement, and certified conflict with two Second District decisions holding that the remaining period of incarceration is the appropriate standard. See In re J.D.C., 819 So.2d 264 (Fla. 2d DCA 2002); In re A.W., 816 So.2d 1261 (Fla. 2d DCA 2002).[1] For the reasons that follow, we agree with the Second District.

*1048 FACTS AND PROCEDURAL HISTORY
B.C. is the father of a daughter born in May 1998. At that time, B.C. was incarcerated, but was released in September 1998. B.C. was returned to custody in December 1998, and in June 1999 commenced concurrent prison sentences, which he is still serving, of sixty months (five years) and ninety-one months (seven years, seven months), for felony battery and aggravated battery. In January 2002, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of both parents. DCF alleged that the father would be incarcerated in state prison for a "substantial portion" of the time before the child will turn eighteen, and that the father's violent criminal history and behavior are evidence that continuing the relationship would be harmful to the child.[2]
The mother surrendered her parental rights, but the father opposed termination of his rights. During a September 2002 hearing on DCF's petition, B.C. testified that he anticipated completing his sentence within twenty-six to forty months after the hearing. He testified that he had attempted to support his daughter and develop a relationship with her, including through prison visits. However, according to B.C., the maternal grandmother, who wished to adopt the child and with whom the child was sheltered, had discontinued contacts between father and daughter. The trial court denied the petition for termination, concluding that the father's remaining incarceration of approximately four years is not a substantial portion of the time before the child, then four years old, will attain the age of eighteen years. The Fourth District reversed, concluding that the entire period of incarceration, rather than the period remaining to be served, was the correct measurement under section 39.806(1)(d)(1), and that the entire seven-year, seven-month sentence in this case constitutes a substantial portion of the child's eighteen-year minority. The Fourth District certified conflict with J.D.C., and A.W., in which the Second District held that under section 39.806(1)(d)(1) the trial court is to consider only future incarceration in determining whether incarceration constitutes a substantial portion of the time before the child turns eighteen. See B.C., 884 So.2d at 956.

ANALYSIS
To explain our resolution of the certified conflict, as well as the related issue of how to quantify the statutory term "substantial portion," we first briefly trace the history of section 39.806(1)(d)(1), then discuss the Second and Fourth District court opinions construing its terms.

History of Section 39.806(1)(d)(1)
When enacted in 1997, the provision now codified in section 39.806(1)(d)(1) set out one of the three criteria that had to be met for termination of the parental rights of an *1049 incarcerated parent. See ch. 97-226, § 1, Laws of Fla. Subsection (1)(d) provided:
(1) The department, the guardian ad litem, a licensed child-placing agency, or any person who has knowledge of the facts alleged or who is informed of said facts and believes that they are true, may petition for the termination of parental rights under any of the following circumstances:
....
(d) When the parent of a child is incarcerated in a state or federal correctional institution and:

1. The period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years:
2. The incarcerated parent has been determined by the court to be a violent career criminal as defined in s. 775.084, a habitual violent felony offender as defined in s. 775.084, or a sexual predator as defined in s. 775.21; has been convicted of first degree or second degree murder in violation of s. 782.04 or a sexual battery that constitutes a capital, life, or first degree felony violation of s. 794.011; or has been convicted of an offense in another jurisdiction which is substantially similar to one of the offenses listed in this paragraph ... and

3. The court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child and, for this reason, that termination of the parental rights of the incarcerated parent is in the best interest of the child.
§ 39.464(1)(d), Fla. Stat. (1997) (emphasis supplied). Thus, the various sections were in the conjunctive. In 1998, section 39.464 was renumbered to section 39.806 during a reorganization of chapter 39. See ch. 98-403, § 88, Laws of Fla. The reorganization was prompted by the federal Adoption and Safe Families Act of 1997, Pub.L. 105-89, 111 Stat. 2115 (codified in scattered sections of 42 U.S.C.). See Fla. H.R. Comm. on Child. & Fams., HB 1019 (1998) Staff Analysis 1 (final June 17, 1998). The federal act sets time limits for developing a timely permanency plan for children who are in the state's care, provides for expedited termination of parental rights under certain circumstances, and uses funding to encourage state compliance with federal requirements.
In 1999, the Legislature revised section 39.806(1)(d) by making its three subsections independent alternatives rather than the previous conjunctive requirements. See ch. 99-193, § 45, Laws of Fla.[3] The 1999 revision isolated the "substantial portion" language of subsection (1)(d)(1) from both subsection (1)(d)(2), which focuses on persons subject to lengthy sentences because of the severity of the crime or recidivism, and subsection (1)(d)(3), which requires a finding that continuing the relationship with the parent would be harmful to the child. Each of these separate subsections now provides an independent basis for termination of the parental rights of a parent incarcerated in a state or federal correctional institution:
(1) The department, the guardian ad litem, or any person who has knowledge of the facts alleged or who is informed of those facts and believes that they are true may petition for the termination of *1050 parental rights under any of the following circumstances:
....
(d) When the parent of a child is incarcerated in a state or federal correctional institution and either:

1. The period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years;
2. The incarcerated parent has been determined by the court to be a violent career criminal as defined in s. 775.084, a habitual violent felony offender as defined in s. 775.084, or a sexual predator as defined in s. 775.21; has been convicted of first degree or second degree murder in violation of s. 782.04 or a sexual battery that constitutes a capital, life, or first degree felony violation of s. 794.011; or has been convicted of an offense in another jurisdiction which is substantially similar to one of the offenses listed in this paragraph ....; or

3. The court determines by clear and convincing evidence that continuing the parental relationship with the incarcerated parent would be harmful to the child and, for this reason, that termination of the parental rights of the incarcerated parent is in the best interest of the child.
§ 39.806(1)(d), Fla. Stat. (2003) (emphasis supplied). For any termination of parental rights under chapter 39, the trial court must find, in addition to the specific grounds contained in section 39.806, that termination is in the best interests of the child. See § 39.810, Fla. Stat. (2003). Each ground for termination must be established by clear and convincing evidence. See § 39.811(2), Fla. Stat. (2003). Further, this Court has held  although not specifically as to section 39.806(1)(d)(1)  that termination of parental rights requires a showing by clear and convincing evidence that reunification of parent and child poses a substantial risk of significant harm to the child, and that termination of rights be the least restrictive means of protecting the child from serious harm. See Fla. Dep't of Children & Families v. F.L., 880 So.2d 602, 608 (Fla.2004); Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 571 (Fla.1991).

District Court Decisions
The Fourth District opinion in this case is one of several opinions in which the Second and Fourth districts have construed the language of section 39.806(1)(d)(1). In B.C., the Fourth District interpreted "period of time for which the parent is expected to be incarcerated" to be the entire period of the father's sentence, which in this case is seven years, seven months, and concluded that this constituted a "substantial portion of the eighteen years of minority." B.C., 884 So.2d at 955, 2003 WL 22014737. In so holding, the Fourth District clarified its position following its decision in W.W. v. Department of Children & Families, 811 So.2d 791 (Fla. 4th DCA 2002). In W.W., the court stated that the statutory language "speaks to the future, not the past" and pointed out that the parent's incarceration was to end within several months after the termination hearing, but also noted that total incarceration of fifty-four months after the birth of the appellant's first child was not a substantial portion of eighteen years. Id. at 792. In B.C., the Fourth District clarified that it "considered the entire period, not merely the future portion," to be the correct measure of incarceration under the provision. 884 So.2d at 956, 2003 WL 22014737.
In each of the certified conflict cases, the Second District concluded that section *1051 39.806(1)(d)(1) requires the trial court to measure the remaining incarceration at the time of the court's decision on termination against the time remaining before the child turns eighteen. In A.W., the court was faced with the question of whether the statutory language "limits the trial court to relying solely on the length of the parent's sentence or whether the trial court may also consider the `quality' of that time in the children's development." 816 So.2d at 1263. Concluding that the "plain language of section 39.806(1)(d)(1) speaks only to time," id. at 1264, the court determined that the fifty-four months remaining in the father's sentence did not constitute a substantial portion of the remaining fourteen- and seventeen-year minorities of the children, and therefore reversed the order terminating his parental rights. See id.
Without citing A.W., a different Second District panel adopted the same interpretation of section 39.806(1)(d)(1) in J.D.C. There the district court reversed an order terminating parental rights in which the trial court determined that the parent "had been incarcerated for `a substantial portion of [the] child's life.'" J.D.C., 819 So.2d at 266. The Second District held that the statutory provision "requires the court to evaluate whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen, not whether the time the parent has been incarcerated in the past is a substantial portion of the child's life to date." Id. The court concluded that the several months remaining in the father's prison term at the time of the termination hearing did not constitute a substantial portion of the fifteen years remaining before the child turned eighteen. See id.
Recently, the Second District, relying on its decisions in A.W. and J.D.C., again reversed a termination order, holding that the remaining incarceration did not constitute a substantial portion of the time before the child turns eighteen. See In re E.I.F., 872 So.2d 924 (Fla. 2d DCA 2004).

The Certified Conflict Issue
The certified conflict issue of whether section 39.806(1)(d)(1) is solely forward-looking or instead encompasses the entire period of incarceration presents a question of statutory construction. This Court's purpose in construing a statutory provision is to give effect to the "polestar" of legislative intent. See State v. J.M., 824 So.2d 105, 109 (Fla.2002). In attempting to discern legislative intent, this Court looks first to the actual language used in the statute. See Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000); see also Overstreet v. State, 629 So.2d 125, 126 (Fla.1993) ("Legislative intent must be determined primarily from the language of the statute."). "When a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." State v. Burris, 875 So.2d 408, 410 (Fla.2004); see also Lee County Elec. Co-op., Inc. v. Jacobs, 820 So.2d 297, 303 (Fla.2002). The language of section 39.806(1)(d)(1) speaks only to the future regarding both the period of incarceration and the child's minority as the criteria to be used in determining whether this ground for termination has been established. The provision specifies that a petition for termination of parental rights may be filed when "[t]he period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years." (Emphasis supplied.) This is the test that the trial court must apply in a hearing on a petition for termination. See § 39.809(1) ("In a hearing on a petition for termination of *1052 parental rights, the court shall consider the elements required for termination."). From the perspective of the trial court deciding on termination, the terms "is expected to be incarcerated," "will constitute," and "will attain," make the provision entirely forward-looking.
We therefore agree with the Second District that the statutory language "requires the court to evaluate whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen, not whether the time the parent has been incarcerated is a substantial portion of the child's life to date." J.D.C., 819 So.2d at 266 (emphasis supplied). We are not at liberty to construe this unambiguous language differently. See Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 323 (Fla.2001) (stating that this Court "will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity") (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 454 (Fla.1992)). Nor are we permitted to add to a statute words that were not placed there by the Legislature. See Seagrave v. State, 802 So.2d 281, 287 (Fla.2001).
This construction of the provision also comports with the constitutional principle that statutes implicating constitutional rights must be "narrowly limited in their application according to the statutory language." State v. Jackson, 650 So.2d 24, 26-27 (Fla.1995). We have consistently held that termination of parental rights implicates the fundamental liberty interest of parents in the care and upbringing of their children. See F.L., 880 So.2d at 608; Beagle v. Beagle, 678 So.2d 1271, 1275 (Fla.1996); Padgett, 577 So.2d at 570; cf. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Thus, "because parental rights constitute a fundamental liberty interest, the state must establish in each case that termination of those rights is the least restrictive means of protecting the child from serious harm." Padgett, 577 So.2d at 571. In determining whether termination is necessary to protect the child from serious future harm, the trial court certainly may take into account evidence of past parent-child contact. Cf. F.L., 880 So.2d at 609 ("For a trial court applying section 39.806(1)(i), the circumstances leading to the prior involuntary termination will be highly relevant to the court's determination of whether the current child is at risk and whether termination is the least restrictive way to protect the child."). However, construing section 39.806(1)(d)(1) to require consideration of past incarceration in making the termination decision would be inconsistent with the constitutionally mandated narrow construction of the statutory language and the constitutionally required focus on future harm to the child.
Justice Bell asserts in his dissenting opinion that a forward-looking construction of section 39.806(1)(d)(1) contravenes section 39.801(9), Florida Statutes, which provides that the provisions of chapter 39 are to be construed "liberally ... and in conformity with the [chapter's] declared purposes." According to Justice Bell, the declared purpose of chapter 39 is to protect children. Although this is the certainly the primary purpose of chapter 39, as expressed in section 39.001(1), the provision also reflects the Legislature's intent that the protection of children be accomplished, if possible, within the family setting. See § 39.001(1)(b) (recognizing that "children achieve their greatest potential when families are able to support and nurture the growth and development of their children"); § 39.001(1)(b)(3) (stating that any "intervention should intrude as little as *1053 possible into the life of the family ... and take the most parsimonious path to remedy a family's problems"). The purpose of protecting children is not necessarily better served by a construction of section 39.806(1)(d)(1) that requires courts to examine the entire period of incarceration during a child's minority than by a construction focusing on the remaining incarceration. Justice Bell's conclusion reflects an underlying assumption, for which there is no supporting legislative pronouncement, that a parent separated from his or her child by incarceration cannot support the child's development or participate in the life of the family. In fact, the Legislature apparently has concluded to the contrary. See § 944.8031(1), Fla. Stat. (2003) (finding that "maintaining an inmate's family and community relationships through enhancing visitor services and programs and increasing the frequency and quality of the visits is an underutilized correctional resource").
Further, we do not consider our construction to be either more or less "friendly" to incarcerated parents than the Fourth District's view. See dissenting op. at 1062 n. 11. If termination is gauged solely by the criteria of section 39.806(1)(d)(1), unwarranted termination can occur under either interpretation. For example, under a construction encompassing both past and present incarceration, the provision could authorize termination of parental rights in the eighth year of a ten-year prison term that was imposed upon the parent when the child was two years of age, regardless of that parent's participation in the child's life during the first eight years of incarceration. Using a forward-looking construction, termination would not be authorized under those circumstances. In contrast, if termination is sought in the scenario of a fifteen-year-old child with a parent commencing a two-year prison sentence, the criteria of section 39.806(1)(d)(1) would be met under a forward-looking construction but not when taking into account the entire period of incarceration during a child's minority. In neither situation would termination based solely on the parent's incarceration necessarily accomplish the Legislature's purpose of providing for the protection of children with minimal interference in the lives of families. However, the potential consequences across the spectrum of situations under which termination may be sought based on parental incarceration are no more harsh to either parent or child under our construction than under Justice Bell's view.
The potential for unwarranted termination under either view is why the provision must be read in light of Padgett's requirement, reiterated in F.L., that "the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child," and that "termination of parental rights is the least restrictive means of protecting the child from harm." F.L., 880 So.2d at 608; Padgett, 577 So.2d at 571. In addition, the petitioner must allege, and the trial court must find, that termination is in the manifest best interests of the child. See §§ 39.802(4)(c), 39.810, Fla. Stat. (2003). Termination of the parental rights of a parent who has played a supportive and beneficial role in the child's life despite the disabilities of incarceration probably would not meet these additional statutory and constitutional criteria. Cf. B.W., 498 So.2d at 948 (stating that "efforts, or lack thereof," by incarcerated parent "to assume his parental duties through communicating with and supporting his children must be measured against his limited opportunity to assume those duties while imprisoned"). Further, termination of an incarcerated parent's rights when another parent retains custody, *1054 which is permitted under section 39.810(3), Florida Statutes, would in many cases be contrary to the child's best interests if the custodial parent facilitates contact with the incarcerated parent.
In sum, termination cannot rest exclusively on the length of incarceration. The actual effect of incarceration on the parent-child relationship must also be considered in light of the additional statutory and constitutional requirements. As we recently stated in F.L. concerning the court's obligation to assess when termination is the least restrictive means of protecting the child from serious harm, the termination decision as a whole "can be made only after a judicious assessment of all relevant circumstances." 880 So.2d at 608. We are confident that trial judges will diligently apply all the statutory and constitutional criteria in ruling on petitions for termination.
Finally, we note that the conclusion we reach as to the interpretation of this statute would encourage the State to pursue termination, if at all, early in a prison term. A termination decision at that point can facilitate the timely development of a permanency plan when the child is younger and can therefore gain greater benefit from the stability created by permanency. In contrast, a construction that encompasses the entire sentence, regardless of when the termination petition is filed, creates no incentive to resolve the issue of parental rights of an incarcerated parent when the decision is of greatest significance to the child.
Accordingly, we reject the construction of section 39.806(1)(d)(1) adopted by the Fourth District in B.C. and instead adopt the forward-looking construction employed by the Second District in J.D.C., A.W., and E.I.F. as being consistent with the statutory language chosen by the Legislature, consistent with the constitutionally required emphasis on future harm, and consistent with the best interests of children of incarcerated parents.

This Case
The trial court, applying the forward-looking construction of section 39.806(1)(d)(1) that we endorse today, concluded that the approximately four years remaining in the father's sentence (from the filing of the petition in January 2002 to the January 2006 maximum release date) was not a substantial portion of the remaining fourteen-year minority of the child. This amounts to 28.6 percent of the child's remaining minority. This percentage is commensurate with the percentages of remaining incarceration that were determined not to constitute a substantial portion of the remaining minority in the district court decisions we have discussed. See e.g., W.W., 811 So.2d at 792 (holding that incarceration for a period constituting twenty-five percent of the child's minority was not a substantial portion); A.W., 816 So.2d at 1264 (holding that remaining incarceration constituting twenty-six percent and thirty-two percent of the remaining minority of the children did not constitute a substantial portion).[4] Thus, we conclude that the trial court did not err in determining that termination was not authorized under section 39.806(1)(d)(1).

CONCLUSION
For the reasons explained herein, we hold that before the parental rights of a parent incarcerated in a state or federal correctional institution may be terminated under section 39.806(1)(d)(1), the trial *1055 court must find by clear and convincing evidence that the time remaining in the parent's incarceration constitutes a substantial portion of the time remaining before the child or children attain the age of eighteen years. Because the starting point for a termination proceeding is a petition alleging grounds for termination, the trial court should measure the time of remaining incarceration and minority from the date that the petition is filed.[5] Accordingly, we approve the Second District's decisions in J.D.C., A.W., and E.I.F. to the extent that these decisions rely on a forward-looking construction of the provision.[6] In this case, we quash the decision of the Fourth District, which reversed the order in which the trial court denied termination of B.C.'s parental right under the construction of section 39.806(1)(d)(1) that we adopt today, and remand for reinstatement of the trial court's order.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, LEWIS and QUINCE, JJ., concur.
PARIENTE, C.J., concurs with an opinion.
WELLS, J., dissents with an opinion, in which CANTERO and BELL, JJ., concur.
BELL, J., dissents with an opinion, in which WELLS and CANTERO, JJ., concur.
PARIENTE, C.J., concurring.
I concur in the majority opinion, and write separately to note that the issue of incarcerated parents is of both statewide and nationwide importance, and to call attention to the Legislature's emphasis on maintaining the family relationships of incarcerated parents.
In 1999, an estimated 721,500 state and federal prisoners were parents to almost 1.5 million children under the age of eighteen. Twenty-two percent of all minor children with a parent in prison were under five years old. Forty-four percent of all incarcerated fathers and sixty-four percent of all incarcerated mothers reported *1056 living with their children prior to admission, and nearly two in three state prisoners reported monthly contact with their children by phone, mail, or personal visits. See Bureau of Justice Statistics, U.S. Dep't of Justice, NCJ 182335, Special Report: Incarcerated Parents and Their Children 1 (2000).
In Florida, many of the 73,000 inmates incarcerated in state prisons are parents of minor children. When called upon to decide whether termination of the parental rights of a prison inmate is in the manifest best interests of the child and is the least restrictive means of protecting the child from serious harm, trial courts should consider the public policy favoring a continuing relationship between imprisoned parents and their children.
The Legislature has embraced contacts between incarcerated parents and their children as a tool to combat recidivism. Section 944.8031, Florida Statutes, enacted in 1999 to set minimal standards for family visitation areas in state correctional facilities, includes the following findings:
The Legislature finds that maintaining an inmate's family and community relationships through enhancing visitor services and programs and increasing the frequency and quality of the visits is an underutilized correctional resource that can improve an inmate's behavior in the correctional facility and, upon an inmate's release from a correctional facility, will help to reduce recidivism.
§ 944.8031(1), Fla. Stat. (2003). These legislative findings echo the conclusions of researchers who have commented on the importance of maintaining the parent-child relationship in the best interests of both parent and child:
Many positive outcomes can result from increasing a father's emotional and financial involvement in his children's lives while he is incarcerated. One such benefit is reducing recidivism. Fathers who have a connection to their children may be less likely to re-commit a crime. Children will also benefit from having relationships with their fathers.
Welfare Peer Technical Assistant Network, Office of Family Assistance, U.S. Dep't of Health and Human Services, Uniting Incarcerated Parents and Their Families 4 (2002), available at http://www.calib.com/peerta/pdf/seminar_ summary2.pdf (last visited Sept. 1, 2004).
For a mother in prison, the strongest incentive for rehabilitation is to be reunited with her children when she is released. This bond is also critical for the child.
Vicky O. Kimbrell, Mothers In Prison: Safeguarding the Parent-Child Relationship, Clearinghouse Review (July 1994), quoted in James Boudouris, Parents in Prison: Addressing the Needs of Families 2 (2d ed. 1996).
As noted in one of the studies excerpted above, financial involvement is part of the equation. In that vein, termination of the parental rights of an incarcerated parent will often be contrary to a child's best interest in those instances in which the incarcerated parent is providing child support. In Department of Revenue v. Jackson, 846 So.2d 486, 494 (Fla.2003), we held that the fact of a parent's incarceration alone does not authorize a suspension of the obligation to pay child support. Instead, if circumstances dictate, a petition to modify a support obligation should be held in abeyance until the parent is released, when the obligation for support both past and future should be resolved and a realistic payment plan established. See id. at 491-92. Termination of parental rights also terminates any future obligation to pay child support, both during incarceration and afterward. See J.L. v. *1057 G.L., 863 So.2d 428, 430 (Fla. 4th DCA 2003) ("The law as presently stated is clear and unambiguous and does not provide the legal authority to a court to order a parent whose parental rights have been terminated to pay child support."). Therefore, trial courts should take the loss of child support, present and future, into consideration under section 39.810(2), Florida Statutes,[7] in determining whether the best interest of the child is served by termination of the parental rights of an incarcerated parent.
Tension clearly exists between the 1999 revision to section 39.806(1)(d)(1), which bases termination of parental rights on incarceration alone, and section 944.8031, which recognizes the importance of parent-child relationships for incarcerated prisoners. If trial courts take into consideration the benefits to both parent and child of continuing interaction during a parent's incarceration as well as the child support obligation that will be severed by termination of parental rights, termination of parental rights will occur only when continuing the parent-child relationship would pose a substantial risk of significant harm to the child and when absolutely necessary for the manifest best interests of the child.
WELLS, dissenting.
I dissent from the majority's decision to quash the decision of the district court.
I conclude that the district court's decision is a more reasonable construction of the statute. Whether the period of time which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of eighteen can only be logically determined by looking at the entire period of the parent's incarceration. For example, a parent who is incarcerated when a child is two years old and who is expected to serve until the child is fifteen years old will be incarcerated for a substantial portion of the period before the child attains the age of eighteen, regardless of whether the issue is examined when the child is four years old or eleven years old.
The majority gives to the statute too cramped a reading.
Furthermore, I would only decide the conflict issue in this case.
CANTERO and BELL, JJ., concur.
BELL, J., dissenting.
I agree with Justice Wells that the majority's reading of section 39.806(1)(d)(1) is "too cramped." The majority's "plain meaning" analysis completely ignores the statutory context and gives the section a strict construction in contravention of the Legislature's express mandate to interpret the statute liberally. Rather than interpreting the section acontextually and strictly, I would interpret it and apply its plain meaning in light of the statutory context and consistent with a liberal construction that respects the Legislature's expressly stated instructions and purposes.
When section 39.806(1)(d)(1) is read in context of the entire statutory scheme and liberally interpreted to further its legislatively articulated purposes, it is clear that the section requires a court to consider *1058 whether the entire period of the incarcerated parent's incarceration (both the portion already served at the time the termination petition is filed and the portion yet to be served) will constitute a substantial portion of the child's entire period of minority. This interpretation of the section's plain meaning, rather than the majority's, is most consistent with the unambiguous and expressly articulated legislative intent  the protection of this State's minor children. I would affirm the decision of the district court, and I therefore respectfully dissent.

I. INTERPRETING SECTION 39.806(1)(d)(1)
Section 39.806(1) provides several grounds on which the Department of Children and Families (DCF) may petition a court for the termination of a parent's parental rights. See § 39.806(1)(a)-(i), Fla. Stat. (2003). Pursuant to section 39.806(1)(d)(1), DCF may petition a court for termination of parental rights
[w]hen the parent of a child is incarcerated in a state or federal correctional institution and ... [t]he period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years.
§ 39.806(1)(d)(1), Fla. Stat. (2003). The question before us is how properly to define the relevant periods of time that the statute instructs a court to compare.
The majority makes two mistakes in its interpretation of section 39.806(1)(d)(1). First, the majority interprets the operative words of this particular subsection acontextually. In other words, the majority interprets it abstractly, without any reference to the statute as a whole or to the Legislature's expressly stated purposes and intent. This acontextual method of interpretation runs counter to our precedent, which recognizes the importance of reading statutory language in the context of its legislatively expressed purposes and with respect for legislative instructions. See, e.g., Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) ("The preliminary paragraphs of chapter 760 explain its purpose and the manner in which the statute should be interpreted to effectuate that purpose.... We are guided by the Legislature's stated purpose for enacting this chapter and its directive that the Act be liberally construed in reaching our decision.").
The second interpretive error by the majority is giving this subsection a strict, or narrow, construction. See Majority op. at 1052 ("This construction of the provision also comports with the constitutional principle that statutes implicating constitutional rights must be `narrowly limited in their application according to the statutory language.'") (quoting State v. Jackson, 650 So.2d 24, 26-27 (Fla.1995)).[8] The majority's improper reliance on the principle of strict construction is based not only on its failure to heed the Legislature's statutory instruction to interpret chapter 39 liberally, but also on its failure to situate the particular subsection at issue here within the larger constitutional framework applicable to termination of parental rights *1059 cases that we recently clarified in Florida Department of Children & Families v. F.L., 880 So.2d 602 (Fla.2004). I will address each of these points below.

A. Section 39.806(1)(d)(1)'s "plain meaning": Should context be considered?
As I have said, the majority's statutory construction is fundamentally flawed because it attempts to interpret the words of the statute acontextually. Looking at the statutory words alone  isolating them from all context and interpreting them abstractly  the majority emphasizes the Legislature's use of "forward-looking" phrases such as "is expected to be incarcerated," "will constitute," and "will attain," and concludes that "[t]he language of section 39.806(1)(d)(1) speaks only to the future regarding both the period of incarceration and the child's minority." Majority op. at 1051 (emphasis added).
The language of the statute certainly is forward-looking; but it does not necessarily follow (as the majority mistakenly assumes) that the language is only forward-looking. One thing that we can say is plain about the statutory language (and that can be determined conclusively simply by applying conventional definitions to the operative words  in other words, simply by interpreting the words abstractly) is that it requires a court not to look merely at the period of time that the incarcerated parent has already served. See, e.g., In re J.D.C., 819 So.2d 264 (Fla. 2d DCA 2002) (reversing trial court's termination order where one of the trial court's grounds for termination was that the parent had been incarcerated for a substantial period of the child's life to date). That is the import of "is expected to be incarcerated," "will constitute," and "will attain." These phrases signify the Legislature's intent that courts in termination proceedings not be confined to analyzing only the already-materialized effects of the parent's incarceration on the child. Rather, we can conclude from the statutory language that the Legislature intended that courts look to the reasonably determinable effects that a parent's incarceration will have on a child's childhood. But it does not necessarily follow that the Legislature, by signifying its intent that courts look to reasonably determinable future effects, also intended that courts look only to those future effects and ignore the period of incarceration that preceded the filing of the termination petition.[9] And *1060 more importantly for our purposes here, whether or not that was the Legislature's intent cannot be determined solely by analyzing the bare language of the subsection  as the majority unconvincingly attempts to do.
Based on the words of the statute alone, interpreted acontextually, either of the competing interpretations of this section  the Second District's (which the majority accepts) or the Fourth District's (which I accept)  is reasonable. Indeed, without elaboration, both district court opinions (as well as the majority's) say that they are applying the statute's "plain meaning." When this is the case, however, we must dig deeper than the majority does if legislative intent truly is our "polestar." We must attempt to interpret the statutory language in context with other relevant textual expressions of purpose and intent (and statutorily expressed instructions concerning construction) so as to further the Legislature's intent and give effect to its purpose. Here, I think we can do that fairly easily.
The Legislature has instructed us to give chapter 39 a "liberal[] interpret [ation] and construct[ion] in conformity with [the chapter's] declared purposes." § 39.001(9), Fla. Stat. (2003). The paramount purpose of chapter 39 is to protect children. See § 39.001(1), Fla. Stat. (2003) (listing the chapter's purposes). In this light, section 39.806(1)(d)(1) must be interpreted as liberally and broadly as the words naturally will allow so as to promote this purpose. See Joshua, 768 So.2d at 435 ("We are guided by the Legislature's stated purpose for enacting this chapter and its directive that the Act be liberally construed in reaching our decision."). I do not suggest that we "stretch" the words of the statute (even if doing so would in some sense "further" a clearly defined legislative purpose), but where, as here, the cold text alone admits of two equally plausible and natural interpretations, we must choose one, and I think our judicial role requires that we choose that interpretation most consistent with the legislative pronouncement as a whole.
I must stress that I fully agree with the majority that "[w]hen a statute is clear, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Majority op. at 1051 (quoting State v. Burris, 875 So.2d 408, 410 (Fla.2004)). Our disagreement stems from the fact that the majority has not (and cannot) support its "plain language" determination. To merely recite the words of the statute and declare the meaning "plain," when it manifestly is not, is not (although it may superficially appear to be) the mark of the judicial constraint by which we must be guided when called upon to interpret and apply legislative acts.
The statute we are called on to interpret provides that DCF may petition for termination
[w]hen the parent of a child is incarcerated in a state or federal correctional *1061 institution and ... [t]he period of time for which the parent is expected to be incarcerated will constitute a substantial portion of the period of time before the child will attain the age of 18 years.

§ 39.806(1)(d)(1), Fla. Stat. (2003) (emphasis added). Yes, the statute utilizes forward-looking phrases. But how can it be said, from a natural reading of the statutory language, that the statute plainly and unambiguously prohibits consideration of the period of incarceration already served at the time the petition is filed when determining the "period of time for which the parent is expected to be incarcerated"? Is that period of time already served not part of the parent's expected period of incarceration? Is this what those words naturally and unambiguously mean?
The majority's citation to Burris is instructive  not for the support it provides, but for the fundamental difference between the two cases; for in fact, Burris undermines the majority's position. In Burris we interpreted the "robbery with a deadly weapon" statute, which increased the penalty for robbery if in the course of the robbery the offender "carried a firearm or other deadly weapon." Burris, 875 So.2d at 409 (quoting § 812.13(2)(a), Fla. Stat. (2001)). The question was whether a defendant who had used a car (as a deadly weapon) in the course of a robbery could be convicted under section 812.13(2)(a) of "carry[ing] a firearm or other deadly weapon" in the course of a robbery. Burris, 875 So.2d at 410. We looked to the "commonly understood" or "plain and ordinary" meaning of "carry," under which it would have been anomalous to conclude that one could "carry" a car in the course of a robbery. See Burris, 875 So.2d at 412 ("In common parlance, automobiles carry people  people do not carry automobiles.") (quoting Burris v. State, 825 So.2d 1034, 1037 (Fla. 5th DCA 2002)). We even acknowledged the importance of context when we stated that to define the verb "to carry" as synonymous with the verb "to possess" would be at odds with the meaning "commonly ascribed to `carry' in the sense at issue." Burris, 875 So.2d at 412. There was no other sense of the word "carry" that the natural and common understanding of the word, in the context of the statute as a whole, could sustain. Burris, 875 So.2d at 412 ("These sources uniformly support only one conclusion about the plain and ordinary meaning of `carry' as used in section 812.13(2)(a)."). We refused to "ascribe an unusual meaning to `carry' ... in order to obtain a result beyond the statute's plain language." Burris, 875 So.2d at 414 n. 2 (emphasis added).[10]
Unlike the statutory language at issue in Burris, the language of section 39.806(1)(d)(1) is not plain and unambiguous on its face. Neither the interpretation I urge nor the interpretation the majority adopts could be said to ascribe an "unusual meaning" to the words of the statute. While I wholeheartedly endorse the principle of statutory construction employed in Burris, the fact is that it is of little help to *1062 us here, and it is inadequate to support the majority's position.

B. Is a strict construction constitutionally required?
Instead of the legislatively mandated "liberal construction," the majority applies a strict, or narrow, construction.[11] The only ground the majority provides for its strict construction of the statute is its mistaken belief that such a construction is constitutionally required. Majority op. at 1052. A strict construction, however, is not constitutionally required. The majority's reasoning is flawed because it fails to place this particular subsection (one of a number of alternative grounds on which DCF may petition for termination of parental rights) in the constitutional context of Florida Department of Children & Families v. F.L., 880 So.2d 602 (Fla.2004). In F.L., we provided the strict construction necessary to assure the constitutionality of section 39.806(1). Regardless of how broadly or narrowly we interpret section 39.806(1)(d)(1), the principles of F.L. will require that, in addition to satisfying the criterion of the subsection, DCF will also have to carry the burden of proving that there is "a substantial risk of significant harm to the ... child [and] that the termination of parental rights is the least restrictive means of protecting the child from harm." 880 So.2d at 608. DCF will also have to satisfy the statutory burden of demonstrating that termination of parental rights is in the child's manifest best interests. Id. at 607-10 nn. 5 & 6. Like section 39.806(1)(i), which we construed in F.L., section 39.806(1)(d)(1) "gets DCF through the courthouse door." Id. at 609. But no matter how wide or narrow the door, the constitutional requirements of F.L. still remain. The majority's decision today simply narrows the door provided by section 39.806(1)(d)(1). It is not, however, constitutionally required, nor is it consistent with the Legislature's expressed purposes and instructions.

II. CONCLUSION
In conclusion, the majority has interpreted section 39.806(1)(d)(1) in an inappropriately and unnecessarily strict manner. Its acontextual, strict construction is contrary to this Court's historical application of the "plain meaning" rule and its "polestar" of statutory interpretation  an interpretation that is consistent with legislative intent. I would adopt the interpretation of the Fourth District Court of Appeal and hold that section 39.806(1)(d)(1) instructs a court to consider the entire period of incarceration  both the portion already served at the time the petition is filed and the portion yet to be served. This period of time should then be compared to the entire period of the child's minority in order to determine whether it amounts to a substantial portion of that period of minority. This interpretation is the only one consistent with the plain *1063 meaning of the statutory language if plain meaning is to be interpreted in context and if the Legislature's express instruction to interpret the chapter liberally is to be respected. This interpretation is also consistent with the constitutional framework applicable to termination of parental rights cases.
WELLS and CANTERO, JJ., concur.
NOTES
[1] The certified conflict creates jurisdiction for this Court to review the Fourth District decision. See art. V, § 3(b)(4), Fla. Const.
[2] The requirement that incarceration constitute a "substantial portion" of the time before the child turns 18 is a basis for termination under section 39.806(1)(d)(1). Incarceration plus a finding that a continuing relationship would be harmful to the child are grounds for termination under section 39.806(1)(d)(3). This subsection is not before us in this case. The issue of abandonment as grounds for termination under section 39.806(1)(b) is also not before us because the trial court concluded that incarceration for a substantial portion of the child's remaining minority was the only viable basis for termination. This Court has held that incarceration alone does not, as a matter of law, authorize termination for abandonment. See In re B.W., 498 So.2d 946, 948 (Fla.1986).
[3] Chapter 99-193 was enacted to make "technical and necessary changes to chapter 39, F.S., to correct errors and inconsistencies" in the 1998 legislation. Fla. S. Comms. on Judiciary and Child. & Fams., SB 1666 (1999) Staff Analysis 1 (April 15, 1999) (on file with comm.).
[4] We have calculated the percentages in W.W. and A.W. from the figures used in the district court opinions.
[5] In Jesus M. v. Arizona Department of Economic Security, 203 Ariz. 278, 53 P.3d 203 (Ariz.Ct.App.2002), which is cited in the dissent, the court rejected a forward-looking construction of an analogous provision which would have measured the starting point from the decision on termination. The court stated that "[w]hat matters to a dependent child is the total length of time the parent is absent from the family, not the more random time that may elapse between the conclusion of legal proceedings for severance and the parent's release from prison." Id. at 206. Our conclusion that the filing of the petition is the starting point for a determination under section 39.806(1)(d)(1) avoids much of the randomness that caused the court concern in Jesus M. We agree that the length of the parent's absence from the family is what matters to the child, but conclude that the language of the provision does not require a court to measure this absence from a point before the filing of the petition.
[6] Because the remaining incarceration at the time the petition was filed clearly does not constitute a substantial portion of the child's remaining minority, we decline to address what specific percentage constitutes a substantial portion under section 39.806(1)(d)(1), and whether the provision encompasses qualitative as well as quantitative considerations. These questions are beyond the scope of the certified conflict. Cf. Welsh v. State, 850 So.2d 467, 471 n. 6 (Fla.2003); Wood v. State, 750 So.2d 592, 595 n. 3 (Fla.1999) (declining to address issues beyond the scope of the certified conflict). Moreover, these questions implicate constitutional concerns over section 39.806(1)(d)(1), as amended in 1999, which have not been raised by the parties and need not be addressed to reach final adjudication in this case. See Singletary v. State, 322 So.2d 551, 552 (Fla.1975) (warning that "courts should not pass upon the constitutionality of statutes if the case in which the question arises may be effectively disposed of on other grounds").
[7] Section 39.810(2), Florida Statutes (2003), provides:

For the purpose of determining the manifest best interests of the child, the court shall consider and evaluate all relevant factors, including, but not limited to:
....
(2) The ability and disposition of the parent or parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under state law instead of medical care, and other material needs of the child.
[8] Rather than referring to its construction as "strict," the majority prefers the phrase "narrowly limited." The semantic distinction is irrelevant. The very case the majority cites as support for its "narrowly limited" construction recognizes that a "strict" construction and a "narrowly limited" construction are the same thing. See State v. Jackson, 650 So.2d 24, 26-27 (Fla.1995) (holding that statutes implicating state and federal constitutional privacy right "must be strictly construed and narrowly limited in their application according to the statutory language") (emphasis added). To interpret a statute in a "strict" manner is to interpret it in a "narrow" or "narrowly limited" manner, and vice versa.
[9] See, e.g., Jesus M. v. Arizona Department of Economic Security, 203 Ariz. 278, 53 P.3d 203, 206 (Ariz.Ct.App.2002) ("We reject the father's suggestion that we ignore the four years he had already spent incarcerated ... and instead focus only on the amount of time remaining on his sentence. What matters to a dependent child is the total length of time the parent is absent from the family, not the more random time that may elapse between the conclusion of legal proceedings for severance and the parent's release from prison. We conclude the legislature used the words `will be deprived' ... to mean `will have been deprived' in total, intending to encompass the entire period of the parent's incarceration and absence from the home. [The father] has cited no authority in support of his proposed alternative construction, which we find to be at odds with the purpose behind the statute.") (citations omitted).

The majority mischaracterizes the decision in Jesus M. as "reject[ing] a forward-looking construction." Majority op. at 1055, note 5. It would be more precise to say that the court rejected a construction that was solely forward-looking. That, essentially, is the dispute here. See Majority op. at 1051 (stating that the question before us is "whether section 39.806(1)(d)(1) is solely forward-looking or instead encompasses the entire period of incarceration."). I do not contend, nor does the majority, that the statute does not look forward: it most certainly does. The question, however, is whether it only looks forward. On this point, the majority "agree[s] [with Jesus M.] that the length of the parent's absence from the family is what matters to the child," majority op. at 1055, note6  and presumably, then, that is what should matter to a court applying section 39.806(1)(d)(1). As Jesus M. stated, "[w]hat matters to a dependent child is ... not the more random time that may elapse between the conclusion of legal proceedings for severance [or under the scenario here, the filing of the petition for termination] and the parent's release from prison." 53 P.3d at 206. Accepting this premise, I do not see how the majority can then state, in the very same sentence, that "the language of the provision does not require a court to measure [the parent's] absence from a point before the filing of the petition." Majority op. at 1055, note 5. Does the parent's absence from the family matter? Or does only that period of absence occurring after a petition has been filed matter?
[10] Having determined the statute's unambiguously plain meaning, we refused to alter that meaning to interpret the statute in a way that arguably would have furthered legislative intent. Burris, 875 So.2d at 413-14 ("As the State argues... we could infer that the Legislature would intend to deter a robber from using an automobile as a weapon and, thus, that the statute should penalize a robber who uses an automobile as a weapon. However, this interpretation would extend the reach of section 812.13(2)(a) beyond its express language based solely upon a very broad inference rather than any clear indication of legislative intent.... To construe the statute in a way that would extend or modify its express terms would be an inappropriate abrogation of legislative power.").
[11] Actually, despite its statement to the contrary, it is not even clear that the majority's interpretation is the strict, or narrow, one. It is true that the majority's interpretation is more favorable to this particular incarcerated parent; but the majority's interpretation would result in harsher consequences in different scenarios. I point this out only to demonstrate that while the majority has opted for an interpretation that will be friendlier to this particular incarcerated parent than my interpretation would be, it has not adopted a universally friendlier interpretation. Cf. majority op. at 1053 ("[W]e do not consider our construction to be either more or less `friendly' to incarcerated parents than the Fourth District's view.") (emphasis added). Whatever the merits of its interpretation, it is doubtful that it can be supported on the ground that it is required by the principle of strict construction (or narrow limitation) of statutes that implicate fundamental rights, even if such a construction were required.