908 So.2d 568 (2005)
In the Interest of L.C., J.T., L.S., J.S., and R.S., Minor Children.
J.T., father, Appellant,
v.
Department of Children and Family Services, Appellee.
A.L.S., mother, Appellant,
v.
Department of Children and Family Services, Appellee.
R.C., father, Appellant,
v.
Department of Children and Family Services, Appellee.
Nos. 2D04-819, 2D04-918, 2D04-1552.
District Court of Appeal of Florida, Second District.
August 12, 2005.
*569 Heather M. Gray, Riverview, for Appellants.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Christopher Perone, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
These appeals involve the termination of the parental rights of three parties.[1] The Mother, A.L.S., has five children: L.C., L.S., J.T., J.S., and R.S. These children have four different fathers. The trial court terminated the Mother's parental rights as to all five of her children. It also *570 terminated the parental rights of the father, J.T., to his children, J.S. and J.T. Finally, it terminated the parental rights of the father, R.C., to his child, R.S.
We affirm the terminations of the Mother and J.T. concerning the child, J.S., who has suffered at least two instances of severe abuse while in the Mother's care and who requires extraordinary care because of his medical conditions. Although we understand why the trial court concluded that the circumstances surrounding the treatment of J.S. would warrant the terminations of the Mother's parental rights to her remaining four children, we conclude that the record does not support those terminations at this time. There may be no particular need to terminate the Mother's parental rights to the oldest child, L.C., who apparently has been living successfully with her father for the last four years in another city.
Because we reverse the terminations of the Mother's parental rights as to four of her children, L.C., J.T., L.S., and R.S., the terminations of parental rights for the two fathers must be justified as single-parent terminations. We conclude that the record does not justify such terminations.

I. BACKGROUND
The Mother is a single mother of five children between the ages of three and twelve. With the exception of J.S., these children appear to be healthy, normal children. J.S. suffers from complicated medical conditions. He was born with a cleft palate and had to be fed by a syringe for approximately the first six weeks of his life. His feeding is currently assisted by the use of a gastrointestinal tube ("G-tube"). These medical problems have stunted this child's growth, both physically and emotionally.
The Mother's involvement with the Department of Children and Family Services (the Department) began in 1999 after J.S. suffered a severe skull fracture when he was only five or six weeks old. The Mother's then-boyfriend, R.C., was arrested for causing the skull fracture and was subsequently convicted of child neglect and sentenced in January 2001 to five years' imprisonment. The Mother was not charged with any criminal wrongdoing stemming from this incident, but her children were sheltered. The Department filed a petition for adjudication of dependency as a result of this shelter, but the Mother filed a motion to dismiss the petition and the trial court granted that motion in August 1999.
Approximately a year after J.S.'s skull fracture, an anonymous source reported to the Department that J.S. had suffered a serious burn to his foot and that the Mother had failed to seek outside medical attention for this injury. R.C. had not yet gone to prison at that time, and there was some evidence suggesting that he was in the Mother's home at the time of the child's injury, despite orders barring him from contact with any of the Mother's children. There was also evidence that the burn was not accidental.
The Mother claimed that R.C. was not in the home and that the child was injured when she accidentally knocked a pot of boiling water off the stove and onto the child's foot. She stated that she did not seek outside medical treatment because she feared her prior involvement with the Department would prompt the removal of her children. Despite the fact that she did not take the child to the doctor, the Mother testified that she contacted a friend who is a registered nurse and that she treated the child's burn according to the nurse's instructions. After the Department arrived in response to the anonymous call, J.S. was hospitalized for six days with *571 second- and third-degree burns to the top of his foot.
As a result of J.S.'s burn and the Mother's failure to seek professional medical treatment for it, the four children were once again sheltered in November 2000 and the Mother was charged with criminal child abuse. The Mother's fifth child, R.S., was born approximately five months later. This child was not sheltered after its birth and was in the Mother's care until two years later when the Mother was convicted of aggravated child abuse and child neglect as the result of J.S.'s burn.
After the Mother was incarcerated, the Department filed an amended petition for termination of her parental rights as to all five children and the parental rights of three[2] of the fathers as to their respective children.

II. THE MOTHER'S TERMINATIONS
It is perhaps noteworthy that the Department did not file a petition against the Mother alleging that she had failed to comply with a case plan. Instead, the Department alleged that the Mother had engaged in egregious conduct as described in section 39.806(1)(f), Florida Statutes (2003), and that she engaged in conduct toward the children that continued to threaten the life, safety, well-being, or physical, mental, or emotional health of each of the children irrespective of the provision of services, as described in section 39.806(1)(c), Florida Statutes (2003). We conclude that the trial court properly terminated the Mother's parental rights as to the child, J.S., pursuant to section 39.806(1)(f), but that termination of the Mother's rights as to each of her other four children was not established on either of the grounds alleged.
Section 39.806(1)(f) permits termination when a parent "engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling." See § 39.806(1)(f). Egregious conduct is defined as
abuse, abandonment, neglect, or any other conduct of the parent or parents that is deplorable, flagrant, or outrageous by a normal standard of conduct. Egregious conduct may include an act or omission that occurred only once but was of such an intensity, magnitude, or severity as to endanger the life of the child.
See § 39.806(1)(f)(2).
Section 39.806(1)(f) permits a trial court to terminate parental rights not only to the child who has suffered egregious abuse but also to any siblings of such a child. See § 39.806(1)(f). However, this court has held that termination of any unharmed child must be the least restrictive means of protecting them, permissible only where there is competent, substantial evidence that the parent poses a substantial risk of significant harm to the abused child's siblings. See In re K.A., 880 So.2d 705, 709 (Fla. 2d DCA 2004).
In this case, the trial court never determined whether J.S. was burned by accident or on purpose. Instead, the trial court determined that, one way or the other, the Mother's failure to obtain adequate medical care for J.S., primarily because she did not want to alert the Department, was egregious abuse that *572 endangered the life of J.S. There is competent evidence to support that determination and the termination that flowed from it.
On the other hand, if the burn was merely an isolated accident that the Mother tried to conceal, it is more difficult to conclude that this conduct creates a future risk of harm to the other children. This is particularly true when the Mother has been imprisoned to punish and deter such conduct and will be on probation until these children are almost adults. It is noteworthy that the youngest child lived with the Mother for nearly two years after this incident without need of shelter and with no claim of any abuse or neglect. Also noteworthy is the fact that two of the children have been sheltered in the Mother's immediate neighborhood since November 2000. The oldest child, L.C., was placed with her father in another city in 2001. From the record, this placement appears to be permanent. If the Mother is a noncustodial parent with limited visitation rights, it is difficult to determine why her rights to this child and her obligation to provide financial support for this child should be terminated under these circumstances.
Simply stated, the Department failed to present clear and convincing evidence that the Mother posed a substantial risk of significant future harm to the other four children. See In re K.A., 880 So.2d at 709. The Department failed to prove a predictive relationship between the past medical neglect of J.S. and any prospective abuse of the other four children. See A.D. v. Dep't of Children & Family Servs. (In re G.D.), 870 So.2d 235, 238 (Fla. 2d DCA 2004).
Similarly, as to termination under section 39.806(1)(c), the Department failed to present clear and convincing evidence that the children's lives, safety, or health would be threatened by continued interaction with the Mother. Especially in the absence of a case plan, there was no evidence that services had been offered or provided to the Mother or that it would have been futile to provide her with such services. We therefore conclude that termination of the Mother's parental rights under section 39.806(1)(c) was improper. See In re C.W.W., 788 So.2d 1020, 1023 (Fla. 2d DCA 2001); see also N.L. v. Dep't of Children & Family Servs., 843 So.2d 996, 1002 (Fla. 1st DCA 2003).

III. R.C.
R.C. was convicted of child abuse concerning J.S., but he is the father only of the Mother's fifth child, R.S. The Department sought termination of R.C.'s parental rights to R.S. under section 39.806(1)(c), alleging that he engaged in conduct toward J.S. that demonstrated that his continuing involvement in the parent-child relationship with R.S. threatens the life, safety, well-being, or physical, mental, or emotional health of this child irrespective of the provision of services. The Department also sought termination under section 39.806(1)(d), Florida Statutes (2003), claiming that R.C. would be incarcerated for a substantial portion of the child's life before the child reaches the age of eighteen. The trial court terminated parental rights on both grounds.
R.C. received only a five-year prison term in 2001. He apparently was released from prison during the pendency of this appeal. It is now clear that such a prison term, by itself, is not sufficient grounds to support a termination under section 39.806(1)(d). See B.C. v. Fla. Dep't of Children & Families, 887 So.2d 1046 (Fla.2004); see also In re A.D.C., 854 So.2d 720 (Fla. 2d DCA 2003). Thus, the trial court erred in terminating R.C.'s parental rights on this ground.
*573 We agree with the trial court that the evidence supported a termination of R.C.'s parental rights under section 39.806(1)(c). However, because we have reversed the termination of the Mother's rights, R.C.'s termination is now subject to the requirements of section 39.811(6), Florida Statutes (2003).
Section 39.811(6) requires a trial court to consider additional factors when terminating one parent's rights without terminating the rights of the other parent. This section lists the "only" circumstances under which termination of one parent's rights is permissible. See L.N. v. Dep't of Children & Family Servs. (In re E.D.), 884 So.2d 291, 294 (Fla. 2d DCA 2004).[3] This section creates complexities when an appellate court reviews a judgment terminating the parental rights of both parents and concludes that it must reverse the judgment as to one of the parents. The reversal suddenly subjects the termination of the second parent's rights to special requirements that were not material at the time the trial court made its ruling.
When an appellate court reverses the termination of parental rights as to one parent and the trial court has made no ruling with regard to a single-parent termination under section 39.811(6) concerning the other parent, the appellate court can still affirm the single-parent termination if the actual ground for termination as to that parent stated in the judgment is one of the grounds described in section 39.811(6)(e) and that portion of the judgment is otherwise affirmable. On the other hand, an appellate court will typically be unable to uphold a single-parent termination if one parent's parental rights are terminated for a ground not contained in section 39.811(6)(e), such as failure to complete a case plan.[4] In this situation, the appellate court will normally be constrained to reverse the parent's judgment because the judgment and record will not contain findings of fact required by section 39.811(6)(a)-(d) sufficient to affirm the judgment as a matter of law.
In this case, the only ground for termination cited by the trial court that would have permitted termination of only R.C.'s parental rights is section 39.806(1)(d). We have concluded that the trial court erred in terminating R.C.'s parental rights under this ground. Thus, there is no support for the termination on this basis. Neither the judgment nor the record contains a basis to permit us to conclude as a matter of law that the termination was proper under 39.811(6).
Accordingly, in light of the Mother's reversal, we must also reverse R.C.'s judgment and remand for further proceedings.

IV. J.T.'S TERMINATION
J.T. (the Father) is the father of J.T. and J.S. At times, he has been incarcerated for offenses unrelated to the care of these children. Similar to the Mother's circumstances, it is noteworthy that the Department did not seek to terminate J.T.'s rights by alleging that he had failed *574 to comply with a case plan. Instead, the Department sought termination of the Father's parental rights to both these children under section 39.806(1)(f), alleging that he "egregiously" abandoned them. As to J.S., the child with special medical needs, we affirm the termination of the Father's parental rights on this ground. However, we must reverse the termination as to the child, J.T.
Egregious conduct under section 39.806(1)(f) can be abuse, abandonment, neglect or any other deplorable and outrageous conduct by the parent. § 39.806(1)(f)(2). The Department presented competent, substantial evidence that the Father egregiously abandoned his child, J.S. However, the Department did not present competent and substantial evidence allowing us to draw the same conclusion about the child J.T. Although the Father had virtually no contact with J.S. over extended periods, he had fairly consistent contact with J.T. prior to his incarceration. After his release from prison, the Father maintained his interest in J.T. and resumed his contact with this child prior to his termination hearing. The record also reflects some bonding between J.T. and the Father. The Father has also provided material things for this child over the course of her life.
Like R.C.'s case, this termination has also become a single-parent termination by virtue of the reversal of the Mother's judgment. From the record, it appears unlikely that the Father will be a custodial parent, but on remand it may be appropriate for the Department to offer a case plan that provides financial support for J.T. We therefore affirm the trial court's termination of the Father's parental rights as to J.S. but reverse the trial court's termination as to J.T.

V. ON REMAND
We reverse and remand for further proceedings. It may be sensible for the Department to provide the Mother with a case plan regarding her four children. Should the Mother fail to comply with her case plan, the Department would be able to re-initiate dual-parent termination proceedings against the Mother, J.T., and R.C. Regardless of the Mother's situation, the Department has the option of initiating single-parent termination proceedings against both R.C. and J.T. where it will be required to prove the factors in section 39.811(6).
Reversed and remanded with instructions.
KELLY and LaROSE, JJ., Concur.
NOTES
[1] We consolidate these appeals for purposes of this opinion only.
[2] The father of L.C. was never a party to these proceedings. The father of L.S. was named in the petition for termination of parental rights, but evidence of further proceedings against him is not contained in the record. He is not a party to this appeal.
[3] Section 39.811(6) permits single-parent termination under the following circumstances:

(a) If the child has only one surviving parent;
(b) If the identity of a prospective parent has been established as unknown after sworn testimony;
(c) If the parent whose rights are being terminated became a parent through a single-parent adoption;
(d) If the protection of the child demands termination of the rights of a single parent; or
(e) If the parent whose rights are being terminated meets any of the criteria specified in s. 39.806(1)(d) and (f)-(i).
[4] § 39.806(1)(e), Fla. Stat. (2003).