889 So.2d 986 (2004)
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
M.J., the father, and K.J., the mother, Appellees.
No. 4D04-1815.
District Court of Appeal of Florida, Fourth District.
December 22, 2004.
Crystal Y. Yates-Hammond, Fort Pierce, for appellant.
T. Charles Shafer, Fort Pierce, for appellee K.J., the mother.
KLEIN, J.
The trial court found that the Department proved by clear and convincing evidence that the father's sexual deviancy places the four children in this case at extreme risk and constitutes egregious conduct. The court further found that the Department proved that the mother, who refuses to live apart from the father, has failed to protect her children from him. Nevertheless, the court denied termination of parental rights because some of the children opposed terminating the parental rights of the mother. The Department appeals and we reverse.
The children, who were nine, twelve, thirteen and fifteen when this case was tried, were adjudicated dependent and sheltered under a consent agreement in 1995, following a petition seeking dependency filed in 1994. They were placed with their grandmother in 1995, but thereafter moved back with the parents in violation of a court order. In 1998 the Department moved to reinstate protective supervision and a juvenile dependency mediation agreement was entered into in 1999, which required compliance with specific tasks. Parental capacity evaluations determined that the father did not have the capacity to be a proper parent and that the mother's parenting skills were minimally adequate.
*987 The Department moved to reinstate protective services in 2000 and, in 2001 filed a petition for termination of parental rights. After a trial on that petition the case was dismissed, and the Department filed a judicial review social study report and a case plan with concurrent goals of either reunification or termination. In December 2002 the Department changed that goal to seek only termination, and in May 2003 filed this petition for termination.
The petition alleged that the father had sexually abused a sibling of these four children as well as one of these children. It further stated that he believed he had a right to sexually educate his daughters, and that the mother was aware of the abuse.
It was also alleged that the father is a paranoid schizophrenic who refuses to take his medicine and as a result is violent and unstable. The mother also has a mental disability rendering her incapable of providing care and safety for her children. She has been the victim of the father's violence on numerous occasions but refuses to separate from him. The parents had entered into a number of case plans and failed to comply with them over a period of eight years. It was also alleged that the parents do not have the ability to provide food, clothing or medical care for the children.
The oldest child, who was fifteen, testified that she was sexually abused by the father when she was younger, but her mother refused to confront it. She saw her father also sexually molest her ten-year-old stepsister, and informed her mother. The mother, however, responded that this was because the stepsister was throwing herself at the father in a sexual manner. A psychologist testified that ten-year-olds do not do this unless they have already been sexually abused.
The oldest child also testified that there were pornographic movies in the home available for the children to see. Nevertheless, she testified that she loves her mother and does not want her mother's parental rights terminated. She also testified that she was happy in her foster home, did not want to leave it, and wanted to be adopted by her foster mother.
The thirteen year old, who was in a detention center, testified that he loved his mother and father and did not want their rights terminated.
The twelve-year-old was happy living with foster parents, where he had been for the past two years. He testified that his parents had both beaten him and he did not want to live with them. He wanted to visit his mother, but not his father, and did not want his relationship with his mother terminated. He confirmed the availability of pornographic movies, as well as the violence, in his parents' home.
The nine-year-old, who had not lived with his parents for three years, was unresponsive in court and, when he started to cry, the court excused him from testifying further.
None of the children had any interest in living with their mother. As to visitation, the mother, in violation of a court order, would sometimes bring the father with her. Even when the father was not present, visitations between the mother and children did not go well. The children ran off, and the mother acknowledged this.
The order denying termination provided:
1. The Department has proven its case by clear and convincing evidence as to the Father: his sexual deviancy places the children at an extreme risk and constitutes egregious conduct.
2. Although competent and substantial evidence was presented regarding excessive corporal punishment and domestic violence, the court is not basing it [sic] decision upon these issues.

*988 3. The court finds the Department proved by clear and convincing evidence that the mother has failed to protect her children from the father's deviant behavior because she has refused to live separate and apart from him. While this court can understand that on one hand she has an allegiance to the father, on the other hand she owes an allegiance to the children. Therefore, the mother basically failed to protect her children, and to place any of those children back into the custody of these parents constitutes an extreme risk and egregious conduct.
4. Furthermore, the Court finds by clear and convincing evidence that there are no services available to correct this situation. This case has been reviewed repeatedly, and there simply were not alternatives [sic] solutions to solve the problems that the two parents face. This fact is reflected in the testimony of Mr. Rosato and several doctors.
The court, however, denied termination because some of the children did not want to sever all ties to the mother.
In In re D.N.O., 820 So.2d 1064 (Fla. 2d DCA 2002), the trial court denied termination of the parental rights of the mother, who had a lengthy criminal and drug history, including incarceration at least nine times, because she had recently made an attempt to overcome her substance abuse and anger, and had completed a parenting class. The second district reversed, stating that the denial was not supported by competent substantial evidence and was not in the child's best interest. The court observed that the mother's future good intentions could not overcome her past neglect, abandonment, and other failures. As in D.N.O., there was no competent substantial evidence to support denial of termination here.
Section 39.810, Florida Statutes (2001), sets out eleven factors which the court is required to consider where termination of parental rights is at issue. One of the factors is:
The reasonable preferences and wishes of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
§ 39.810(10).
In this case the fact that some of the children were against termination did not amount to competent substantial evidence, in light of the findings of the trial court that the father's sexual deviancy places the children at extreme risk and the mother refuses to protect the children from him. We accordingly reverse.
Section 39.811(7)(b), cited by the Department, authorizes a court to allow parents whose rights are terminated to have "some communication or contact with the child pending adoption if the best interests of the child support this continued communication or contact." The trial court can consider, on remand, whether contact under this provision is appropriate. Reversed.
GUNTHER and MAY, JJ., concur.