ALTENBERND, Judge.
T.V.R., the former husband, appeals an order terminating his parental rights to A.L.R. The petition for termination of parental rights was filed in Florida by C.R., A.L.R.’s mother and T.V.R.’s former wife, shortly after she agreed in a Kentucky divorce settlement that T.V.R. could have supervised visitation with this young child. She agreed to supervised visitation despite the fact that T.V.R. had been court-mart-ialed and imprisoned at Fort Leavenworth, Kansas, for sexually abusing C.R.’s daughters, who are A.L.R.’s stepsisters. Because this case was not properly presented or assessed as a termination of parental rights, we reverse and remand for further proceedings.
T.V.R. and C.R. were married in 1997. C.R. had two daughters from a prior relationship. T.V.R. was a member of the military. In 2000, while the family lived in Kentucky, T.V.R. was arrested on allegations that he had sexually abused his two stepdaughters. The military brought court-martial proceedings against T.V.R. for the crimes. While this was occurring, C.R. filed an action for dissolution of marriage in Kentucky. C.R. immediately raised the allegations of sexual abuse in those proceedings to prohibit contact between T.V.R. and A.L.R. In May 2000, she relocated to Florida with her three daughters.
In October 2000, when A.L.R. was six years of age, T.V.R. was found guilty of sexually abusing his stepdaughters and sentenced to twelve years in military prison. It appears likely that T.V.R. will be eligible for release as early as October 2007 or September 2008. Thus A.L.R. may be thirteen or fourteen years old when T.V.R. is released.
On August 30, 2001, T.V.R. and C.R. resolved the remaining issues in their Kentucky dissolution proceeding and entered into a marital settlement agreement. C.R. was apparently given a disproportionate share of the marital property in recognition of the fact that T.V.R. would be incarcerated and unable to contribute significant support for A.L.R. during the next several years. The parties agreed that T.V.R. would have supervised visitation with A.L.R. twice each year at the military prison in Kansas. T.V.R.’s parents were also provided some visitation with A.L.R. during the summer. The parties’ agree *397 ment was incorporated into a Kentucky judgment on September 6, 2001.
After the agreement was incorporated into the final judgment of dissolution, T.Y.R. and A.L.R. had some contact by telephone and mail. The first supervised visitation at the prison was scheduled to occur in January 2002. T.V.R. made arrangements for the visitation with prison officials, and some of his family flew to the location of the military prison to participate in the visitation. The child never arrived. Instead, on January 14, 2002, C.R. filed the petition to terminate T.V.R.’s parental rights in Collier County, Florida.
C.R. was initially held in contempt in Kentucky for failing to comply with the visitation order. However, because neither the parties nor the child continued to reside in Kentucky, the Kentucky court relinquished jurisdiction over the parties and the subject matter, allowing the matter to become a Florida action.
Perhaps because this petition for termination of parental rights was filed by the mother of the child and not the Department of Children and Family Services, the trial was conducted in a manner more akin to a child custody dispute in a dissolution proceeding than a termination of parental rights case. C.R. focused primarily on the circumstances of T.V.R.’s conviction and incarceration — facts she knew when she agreed that he could have supervised visitation with the child. T.V.R., on the other hand, argued almost exclusively that his parental rights could not be terminated unless C.R. established a substantial change in circumstances after the parties entered into their separation agreement.
In the final judgment, the trial court openly recognized that it was troubled by C.R.’s acquiescence to the marital settlement agreement shortly prior to the filing of the petition for termination of parental rights. However, the trial court indicated it was required to focus on the “best interests” of the child. The court granted the petition for termination of parental rights “based on [section] 39.806(l)(d), [Florida Statutes (2002) ] and further on the fact that the father’s conduct has been egregious.” Unlike the lengthy final judgment typically entered in a termination of parental rights proceeding in which the Department of Children and Families is involved, this judgment is 2$ pages in length.
The trial court properly shifted its focus from the parties’ settlement agreement to the allegations of abuse as they related to the manifest best interests of the child. Certainly, if the Department of Children and Families had filed this petition, there is no doubt that it could have pursued the petition despite the parties’ agreement regarding visitation. The fact that the mother filed this petition makes the matter somewhat troubling from an equitable standpoint, but section 39.802(1), Florida Statutes (2002), permits the filing of such a petition by “any other person who has knowledge of the facts alleged or is informed of them and believes that they are true.” Because the issues presented in a termination of parental rights case and the state’s interests in a termination proceeding are distinct from the issues presented in a child custody or visitation action between the parents — albeit overlapping in their consideration of a child’s best interests — we conclude that principles of res judicata and collateral estoppel do not apply between these two types of proceedings.[1]
*398 However, neither the parties nor the trial court focused on the specific issues presented by the petition for termination of parental rights: whether there was clear and convincing evidence supporting a statutory ground for termination; whether there were grounds to support a single-parent termination; whether termination was in the manifest best interest of the child; and whether termination was the least restrictive means of protecting the child.
As to the grounds for the termination, the Florida Supreme Court’s decision in B.C. v. Florida, Department of Children & Families, 887 So.2d 1046 (Fla.2004), calls into question the trial court’s conclusion that T.V.R.’s parental rights could be terminated because of the length of the term of his incarceration under section 39.806(1)(d)(1).[2] In B.C., the supreme court held that section 39.806(1)(d)(1) requires the court to evaluate whether the time for which a parent is expected to be incarcerated in the future constitutes a substantial portion of the time before the child reaches eighteen, measured from the date of the filing of the petition for termination of parental rights. 887 So.2d at 1052, 1054-55. Under this analysis, T.V.R. will apparently continue to be incarcerated for five to six years, measured from the filing of the petition for termination of parental rights. A.L.R. will remain a minor for approximately ten years from that date. The trial court did not assess whether T.V.R.’s five to six years of incarceration was a “substantial” portion of the ten years remaining of A.L.R.’s minority.
Although the trial court did not specifically cite the statute, the court apparently concluded that T.V.R.’s parental rights could be terminated pursuant to section 39.806(1)(f), permitting termination when a parent engages in egregious conduct threatening the mental and emotional health of a child or the child’s sibling. There is no question that the sexual abuse of A.L.R.’s stepsisters qualifies as “egregious abuse.” See, e.g., Dep’t of Children & Family Servs. v. M.J., 889 So.2d 986 (Fla. 4th DCA 2004); Dep’t of Children & Families v. B.B., 824 So.2d 1000 (Fla. 5th DCA 2002). Further, there was at least some evidence that this abuse had an effect on A.L.R. and that a continued relationship with T.V.R. might pose a substantial risk of significant harm to her. We note that when T.V.R. is released from prison, A.L.R. will be approximately the same age as were her stepsisters when they were molested. Nevertheless, the trial court did not assess these factors in making its determination that parental rights should be terminated.
Even if grounds for the termination of T.V.R.’s rights had been established at trial, the trial court was also required to determine whether a termination was in the child’s “manifest best interests” and whether it was the “least restrictive means” to protect the child. The trial court discussed the best interests of A.L.R. and there was some testimony in *399 this regard, but the court never made reference to section 39.810, Florida Statutes (2002), or the “manifest best interests” factors listed in that statute. The trial court also never addressed whether termination was the least restrictive means of protecting the child. Although the Kentucky final judgment of dissolution, incorporating the parties’ settlement agreement, was not binding under principles of res judicata or collateral estoppel, it was certainly relevant to show that C.R. had initially agreed that a less restrictive means existed to protect the child.
Finally, this was a “single-parent termination.” The record reveals no assessment as to whether the requirements of section 39.811(6), Florida Statutes (2002), were satisfied. This statute provides that the parental rights of one parent may be severed without severing the parental rights of the other parent only under enumerated circumstances. Again, there may have been evidence to support such a finding in this case, but no such finding was actually made.[3]
We therefore reverse the judgment terminating T.V.R.’s parental rights and remand for the trial court to conduct further proceedings in accordance with the requirements of chapter 39 and due process.
Reversed and remanded.
CASANUEVA and SILBERMAN, JJ., Concur.

. The fact that a divorced parent can file a petition for termination of parental rights does not mean that such a petition should be used as a second challenge to the custody determination in a dissolution proceeding. Trial courts have every right to examine such *398 petitions with caution and care. We note that the trial court in this case prudently appointed a guardian ad litem. Termination cases filed by divorced parents are rare, and it may be that the Department of Children and Families should regularly appear in such cases to protect the State's interests and to assure that the petition is not misused as a substitute for more appropriate family law remedies.

. C.R. did not argue, nor did the trial court assess, whether T.V.R.’s parental rights could be terminated under section 39.806(1)(d)(2) (permitting termination if the incarcerated parent has been convicted of an offense in another jurisdiction that is substantially similar to a sexual battery that constitutes a capital, life, or first-degree felony violation of section 794.11, Florida Statutes (2002)).

. The final judgment also contains a provision declining to amend the visitation rights given to the paternal grandparents in the Kentucky marital settlement agreement but requiring them to attend counseling. These provisions have not been appealed, and the grandparents were not parties in the trial court or on appeal. This court assumes that this opinion has no impact on rights granted to the grandparents in Kentucky.